# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

AMERICAN MECHANICAL SOLUTIONS, L.L.C.,

      Plaintiff,

vs.                                    No. CIV 13-1062 JB/SCY

NORTHLAND PROCESS PIPING, INC. and
UNISOURCE MANUFACTURING, INC.,

      Defendants.

## MEMORANDUM OPINION[1]

**THIS MATTER** comes before the Court on the Defendants' Motion for Summary Judgment and Request for Stay of Remaining Pre-Trial Deadlines and Memorandum Brief in Support, filed March 2, 2015 (Doc. 81)("MSJ").  The Court held a hearing on June 24, 2015.  The primary issue is whether Plaintiff American Mechanical Solutions, L.L.C. must produce expert testimony regarding causation to survive summary judgment on its breach-of-contract, breach-of-the-implied-warranty of merchantability, and breach-of-the-implied-warranty-of-fitness-for-a-particular-purpose claims.  The Court will grant in part and deny in part the MSJ.  The Court will grant the MSJ on American Mechanical's breach-of-contract and breach-of-the-implied-warranty of merchantability claims.  The Court will deny summary judgment on American Mechanical's breach-of-the-implied-warranty-of-fitness-for-a-particular-purpose claim.  The Court concludes that, under New Mexico law, causation is an element for breach-of-

---

[1]The Court issued an Order, filed March 11, 2016 (Doc. 133)("Order"), granting in part and denying in part the Defendants' Motion for Summary Judgment and Request for Stay of Remaining Pre-Trial Deadlines and Memorandum Brief in Support, filed March 2, 2015 (Doc. 81), stating that the Court would "at a later date issue a Memorandum Opinion more fully detailing its rationale for this decision."  Order at 1 n.1.  This Memorandum Opinion is the promised opinion.

contract and proximate causation is an element for breach-of-the-implied-warranty-of-merchantability claims.  In this case, the cause of the exploding or leaking hoses at the Southwest Cheese Factory cannot be determined by resort to common knowledge that an average person ordinarily possesses.  The Defendants are therefore entitled to summary judgment on American Mechanical Solutions' breach-of-contract and breach-of-the-implied-warranty-of-merchantability claims, because American Mechanical has not submitted expert testimony on them.  Because the Court concludes that neither causation nor proximate causation is a prima facie element for a breach of the implied-warranty-of-fitness-for-a-particular-purpose claim, however, it denies the MSJ as to that claim.

## FACTUAL BACKGROUND

The Court will provide two factual background sections, because of the MSJ's unique posture.[1]  First, the Court will provide a general factual background section based on the allegations in the Complaint.  See Complaint for Breach of Contract, Breach of Implied Warranty of Merchantability, and Breach of Implied Warranty of Fitness for a Particular Purpose, filed April 8, 2013 (Doc. 1-1)("Complaint").  Second, the Court will provide a short factual background section that sets forth the undisputed material facts based on the parties' briefing on the MSJ.

---

[1] At the June 24, 2015, hearing, the Defendants agreed with the Court that, in many respects, this MSJ is more like a motion to dismiss or a motion of judgment on the pleadings. See Transcript of Hearing at 29:7-31:17 (Court, Lewis)(taken June 24, 2015)("Tr.")(The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final version may have slightly different page and/or line numbers.).  The Defendants agreed that the Court should rely on the Complaint with one additional undisputed fact -- that American Mechanical did not name an expert.  See Tr. at 29:7-31:17 (Court, Lewis).

1.     **Factual Background from the Complaint.**

American Mechanical is a corporation that operates in the State of New Mexico with its main office in Mountainair, New Mexico.  See Complaint ¶ 1, at 1.  Defendant Northland Process Piping, Inc., is a corporation that operates in the State of New Mexico with an office in Roswell, New Mexico.  See Complaint ¶ 2, at 1.  Defendant Unisource Manufacturing, Inc., is a corporation that operates in the State of New Mexico with an office in Albuquerque, New Mexico.[1]  See Complaint ¶ 3, at 2.

American Mechanical "is a specialty contractor working in the food and biodiesel industries providing installation and repair of food grade process piping with an emphasis in stainless steel welding."  Complaint ¶ 6, at 2.  Northland Piping and Unisource Manufacturing are both nationwide companies that supply food grade materials to the food and biodiesel industries.  See Complaint ¶ 7, at 2.  On or around October 7, 2012, Southwest Cheese Company, LLC issued American Mechanical "a purchase order to install (weld) hoses on eight (8) clarifiers.  Each clarifier takes four (4) hoses for a total of thirty-two (32) hoses."  Complaint ¶ 8, at 2.  Southwest Cheese Company -- one of the largest and most successful cheese and whey

---

[1]The Defendants' Notice of Removal, filed October 29, 2013 (Doc. 1)("Notice of Removal"), makes clear that complete diversity of citizenship exists in this case and the parties do not otherwise question the Court's jurisdiction.  See Notice of Removal ¶¶ 11-15, at 3-4.  The Notice of Removal notes that American Mechanical is a limited liability company with four individual members that are each residents and citizens of New Mexico.  See Notice of Removal ¶ 12, at 3.  American Mechanical is therefore a citizen of New Mexico for diversity purposes.  See Notice of Removal ¶ 12, at 3.  Unisource Manufacturing is a foreign corporation that is incorporated in Oregon and has its principal place of business in Oregon.  See Notice of Removal ¶ 13, at 3-4.  Unisource Manufacturing is therefore a citizen of Oregon for diversity purposes.  See Notice of Removal ¶ 13, at 3-4.  Finally, Northland Piping is a foreign corporation that is incorporated in Minnesota and has its principal place of business in Minnesota.  See Notice of Removal ¶ 14, at 4.  Northland Piping is therefore a citizen of Minnesota for diversity purposes.  See Notice of Removal ¶ 14, at 4.  "Thus, there is complete diversity of citizenship between the Plaintiff and the Defendants."  Notice of Removal ¶ 15, at 4.

protein manufacturers in the world -- has been doing business with American Mechanical for several years, which is a major source of income for the company.  See Complaint ¶¶ 9-10, at 2.  "The hoses and hose fittings that are at the core of this dispute were purchased from the defendant Unisource Manufacturing through defendant Northland Process Piping."  Complaint ¶ 11, at 2.  Unisource Manufacturing supplied "the hoses, fittings, dies and crimping equipment" to Northland Piping.  Complaint ¶ 12, at 2.  It also "supplied the technical training and support to NPP for the proper installation of the fittings onto the hoses."  Complaint ¶ 13, at 3.

"The hoses with the attached crimped fittings were not off the shelf materials, but needed to be made to the custom length specifications ordered by AMS."  See Complaint ¶ 14, at 3.  When American Mechanical bought the materials, it notified Unisource Manufacturing of the use and custom specifications that would be required.  See Complaint ¶ 15, at 3.  "The manufacturer stated to AMS that they understood the specified use, and that there would be no problem."  Complaint ¶ 16, at 3.  "Immediately after extensive installation, the hoses began to fail."  Complaint ¶ 17, at 3.

**2.      Factual Background from the MSJ.**

American Mechanical "alleges that the hoses it installed at the Southwest Cheese plant failed."   MSJ at 3 (setting forth this fact); Plaintiff's Response to Motion to for Summary Judgment and Response to Request for Stay of Remaining Pre-Trial Deadlines at 4, filed March 16, 2015 (Doc. 83)("Response")(not disputing this fact).  American Mechanical alleges that the Defendants caused the hoses' failure.  See MSJ at 3 (setting forth this fact); Response at 4 (not disputing this fact).  American Mechanical alleges that the hoses' failure caused it damages.  See MSJ at 3 (setting forth this fact); Response at 4 (not disputing this fact).  Pursuant to the Court's

July 9, 2014 Order Adopting in Part and Modifying in Part Joint Status Report and Provisional Discovery Plan and Setting Case Management Deadlines, filed July 9, 2014 (Doc. 29), American Mechanical Solutions' deadline to disclose its Rule 26 Experts was October 6, 2014. <u>See</u> MSJ at 3 (setting forth this fact); Response at 4 (admitting this fact). To date, American Mechanical has not disclosed an expert in accordance with Rule 26. <u>See</u> MSJ at 3 (setting forth this fact); Response at 4 (not disputing this fact). American Mechanical has no expert testimony that the Defendants caused any of the alleged hose failures. <u>See</u> MSJ at 3 (setting forth this fact); Response at 4 (not disputing this fact). American Mechanical has no expert testimony that the Defendants caused the harm which it alleges to suffered. <u>See</u> MSJ at 3 (setting forth this fact); Response at 4 (not disputing this fact).

## **PROCEDURAL BACKGROUND**

American Mechanical filed its case in state court on April 8, 2013. <u>See</u> Complaint at 1. The Defendants removed the case to federal court on October 29, 2013. <u>See</u> Defendants' Notice of Removal, filed October 29, 2013 (Doc. 1)("Notice of Removal"). The Defendants invoked diversity jurisdiction representing that there is complete diversity of citizenship between American Mechanical and the Defendants. <u>See</u> Notice of Removal ¶¶ 10-19, at 3-5. In its Complaint, American Mechanical asserts causes of action for: (i) breach of contract, <u>see</u> Complaint ¶¶ 22-27, at 3-4; (ii) breach of implied warranty of merchantability, <u>see</u> Complaint ¶¶ 28-31, at 4; and (iii) breach of implied warranty of fitness for a particular purpose, <u>see</u> Complaint ¶¶ 32-36, at 4-5.

1.      **The MSJ**.

The Defendants filed the MSJ on March 2, 2015.  See MSJ at 1.  The Defendants contend that they are entitled to judgment as a matter of law, because American Mechanical "cannot establish that the alleged failure of the hoses, about which it complains, was caused by the Defendants" and that it "cannot prove that its alleged harm was caused by the Defendants rather than by its own actions or the actions of a non-party."  MSJ at 1.  The Defendants first assert that American Mechanical lacks competent evidence that the Defendants caused the alleged hose failures.  See MSJ at 3.  They argue that the movant has the initial burden of establishing the absence of a material question of fact, but that a movant can discharge that burden by showing that there is an absence of evidence to support the non-moving party's case.  See MSJ at 3-4.  According to the Defendants, once the movant meets its burden, the burden shifts to the non-movant to demonstrate a genuine issue of trial on a material fact, and the plaintiff "may not rest on its pleadings; instead, it must set forth specific facts showing there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  MSJ at 4 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  The Defendants contend that here, "for Plaintiff to establish that the alleged failure of the hoses was caused by the Defendants, it must show that Plaintiff's alleged damages were proximately caused by the actions or inactions of the Defendants rather than by Plaintiff's own actions, or the actions of a non-party."  MSJ at 4.  They argue that, in cases like this one, where causation evidence is "highly technical," expert testimony is necessary.  MSJ at 4 (citing e.g., Duran v. Gen. Motors Corp., 1983-NMCA-121, ¶ 48, 688 P.2d 799, 790).  The Defendants insist that the cause of a leak in a commercial hose in a

cheese manufacturing plant is a technical aspect that is beyond the purview of a lay person and an expert witness must present the evidence. <u>See</u> MSJ at 4. They assert:

> A lay witness would not have knowledge of the relevant materials, assembly process, temperature and pressure specifications for each hose or the installation or maintenance requirements. Specifically, the realm of common experience does not include information about hose configuration, hose crimping, hose welding, hose maintenance, the effect of high pressure desludging or of temperatures in the hoses. Thus, "[w]ithout expert testimony, the jury would be left to stack inferences on inferences."

MSJ at 5 (quoting <u>Duran v. Gen. Motors Corp.</u>, 1983-NMCA-121, ¶ 48, 688 P.2d at 799).

The Defendants further argue that "proximate causation under New Mexico law requires that a plaintiff demonstrate that the act, or product in this case 'actually aided in producing the injury.'" MSJ at 5 (quoting <u>Huber v. Armstrong World Indus.</u>, 930 F. Supp. 1463, 1465 (D.N.M. 1996)(Conway, J.)). According to the Defendants, the issue of proximate cause becomes a question of law when the facts are not disputed, and there is no evidence from which a jury could reasonably find a causal connection between the allegedly negligent act and the jury. <u>See</u> MSJ at 5. They contend that "the absence of expert testimony will prevent the issue from ever reaching the jury." MSJ at 5-6. Here, the Defendants insist, American Mechanical "must show that its alleged damages were proximately caused by Defendants' alleged breach of contract or breach of warranties." MSJ at 6. The Defendants maintain that, without expert testimony, American Mechanical cannot satisfy its burden of proof on summary judgment or at trial. <u>See</u> MSJ at 6. Moreover, they state that New Mexico courts "routinely grant summary judgment in favor of defendants where the plaintiff fails to offer expert testimony establishing that the Plaintiff's harm was caused by the Defendants." MSJ at 6 (citing <u>e.g.</u>, <u>Buchanan v. Downing</u>, 1964-NMSC-175, 394 P.2d 269). In conclusion, the Defendants explain:

As set forth above, Plaintiff does not have any expert witness who will offer an opinion concerning the cause of the alleged hose failures that led to all of Plaintiff's claimed damages.  Plaintiff's breach of contract and breach of warranties claims are based on the failure of the hoses.  Plaintiff claims that its damages flow from the failure of the hoses and that the failure was caused by Defendants.  Thus, Plaintiff must show, through expert testimony, that it was the Defendants that caused the alleged hose failure, rather than Plaintiff's own actions or the actions of other non-parties.  Plaintiff has not provided any expert testimony on the cause of the alleged hose failure.  Thus, it cannot show that its damages naturally flowed from any action of the Defendants, and cannot prevail on its claims against them.

MSJ at 6 (citations omitted).

The Defendants next argue that American Mechanical is now "precluded from offering testimony regarding the cause of the alleged hose failure based on its failure to comply with its rule 26 disclosure obligations."  MSJ at 7.  They assert that a pre-requisite to offering expert testimony at trial is the filing of proper expert disclosures under rule 26(a)(2), which "unequivocally mandates that a party must disclose, at a minimum, the 'facts and opinions' to which an expert will testify, even if that expert is not required to issue a report."  MSJ at 7 (quoting Fed. R. Civ. P. 26(a)(2)(C)).  The Defendants contend that this rule's purpose is "to place the opposing party on notice of the expert's opinions to enable them to determine what areas to explore with the expert, as well as to determine whether to designate rebuttal experts." MSJ at 7 (quoting Cotton v. City of Eureka, 2012 U.S. Dist. LEXIS 37002, at *6 (N.D. Cal. Mar. 16, 2012)).  They maintain that, if a party fails to properly disclose a witness as an expert, rule 701 of the Federal Rules of Evidence limits that witness's testimony and he or she may only testify as a lay witness.  See MSJ at 7-8.  The Defendants conclude that, because American Mechanical in this case did not disclose an expert in this matter, "it is precluded from offering any testimony regarding the cause of the alleged hose failure."  MSJ at 8.  Furthermore,

according to the Defendants, American Mechanical cannot meet its burden by attempting to offer such an opinion through a lay witness, because a lay witness would "not have knowledge of relevant materials, assembly process, appropriate temperature and pressure specifications for each hose or the installation or maintenance requirements."  MSJ at 8.  In sum, the Defendants maintain that American Mechanical has "come forward with no expert testimony to support its claims against the Defendants, and thus cannot meet its burden to prove that Defendants' alleged breach of contract or warranties caused Plaintiff's harm or damages, an essential aspect of each of its claims against Defendants."  MSJ at 8.

2.      **The Response**.

American Mechanical responded to the MSJ on March 16, 2015.  See Response at 1. American Mechanical first asserts that "the defendants cannot prove the absence of the material question" and that it has provided evidence of liability based on the Defendants' direct admissions.  Response at 5.  It argues that the hoses and fittings were undercrimped when they were sold to American Mechanical for installation, and that it was this undercrimping, and not exceeded temperatures or pressures, that led to the failures.  See Response at 5.  American Mechanical criticizes Northland Piping[1] for raising the issue of temperature and pressure for the first time in the MSJ, and asserts that if Northland Piping intends to proceed along those lines, it needs to disclose and produce those experts for examination.  See Response at 5.  According to

---

[1]As stated above, although Northland Piping and Unisource Manufacturing jointly filed the MSJ with Unisource Manufacturing as the movant, by the time American Mechanical filed its Response, Unisource Manufacturing was no longer a party to this lawsuit, because it had reached a settlement with American Mechanical.  See Tr. at 23:20-24:9 (Court, Lewis).  For the sake of simplicity and because Northland Piping is the only defendant that remains in the case, the Court will hereafter refer to "Northland Piping" instead of "the Defendants" in this Memorandum Opinion.

American Mechanical, if the Northland Piping does so, American Mechanical will produce a counter-witness.  See Response at 5.  American Mechanical further explains:

> The defendants have been the only ones in possession of the first hoses that blew apart and leaked since the failures began, and it is their experts who have had the hoses in question, and they were the only parties able to do any form of expert evaluation.  The plaintiff will not know until those experts are made available what experts it will need (if indeed any will be needed at all) to rebut their presumptions.  The plaintiff in this case is not resting on its pleadings.  There is a genuine issue for trial which goes to the heart of this case, and that is the admission of fault by the defendants that was made available in discovery in emails, pictures, and voicemails.  The evidence has been provided that would enable a jury to return a verdict for the plaintiff.  The defendants assert that causation evidence in this case is highly technical and requiring expert testimony.  Our position is that that issue is already made moot by the direct admissions of the defendant as to causation -- the defendants have expressly admitted that the hoses and fittings were undercrimped and defective at the time of sale to the plaintiff.

Response at 6.

American Mechanical argues that, although Northland Piping asserts that a lay witness would not have knowledge of the relevant materials, assembly process, hose specifications, or installation requirements, it has provided in discovery the information required to qualify themselves as experts in all of those areas.  See Response at 6.  According to American Mechanical, an expert might be required in a medical case, "where it is not clear that the damages caused the injuries."  Response at 6-7.  It argues that here, however, there is no need for expert testimony.  See Response at 6-7.  Further, American Mechanical contends that it will introduce its financial records, invoices, purchase orders, and other economic data as evidence at trial, which it has provided in discovery to show how much revenue was lost because of the defective hoses.  See Response at 7.

American Mechanical next asserts that it will "offer direct admissions of the defendants concerning the causation of the hose failure." Response at 8. It argues that proof of causation in this case comes from Northland Piping's omissions and not from the outside expert witnesses' testimony. See Response at 8. American Mechanical contends:

> The defendants have been provided in discovery with all of the admissions of the defendants regarding the defective hoses, and the defendants have been provided also with the physical defective hoses and fittings themselves for examination by their experts before they could even be examined by possible experts of AMS. If the defendants now wish to assert that the hoses failed for a different reason other than those that the defendants have already admitted, and wish to introduce experts on that new point which has not yet been addressed, then the plaintiff will ask for the opportunity to present testimony from experts in rebuttal that it has not yet retained.

Response at 8. It also argues that "the plaintiff/owners hold themselves out as experts in their field of welding and installation." Response at 9. American Mechanical states:

> The defendants through discovery have received all the certifications that qualify the plaintiff/owners as experts in their field. The plaintiff has met the requirements of the rule regarding expert testimony; the disclosures, the procedures employed in the assembly and installation of the hoses and fittings, and the testimony that they would provide have all been timely submitted. AMS also disclosed the evidence and general testimony of the defendants holding themselves out as experts in hose and fitting assemblies to the dairy trade. We ask the Court to note that this expert testimony on the part of the plaintiff/owners is only given to show that it was not their actions which caused the hoses and fittings to fail. It should also be noted that if needed, the unrelated party Southwest Cheese will further testify that they did nothing unusual regarding temperature and pressures in the use of those same hoses. The testimony of the non-party Southwest Cheese, and the expert testimony of the plaintiff/owners will show that they were not a direct cause of failure of the hoses and fittings.

Response at 8-9.

### 3.    **The Reply**.

Northland Piping replied on March 26, 2015. See Defendant Northland Process Piping, Inc.'s Reply in Support of its Motion for Summary Judgment and Request for Stay of Remaining

Pre-Trial Deadlines, filed March 26, 2015 (Doc. 84)("Reply").   Northland Piping makes essentially three arguments.   See Reply at 2-6.   It first argues that it is entitled to summary judgment, because American Mechanical does not comply with rule 56 and refer with specificity to any evidence disputing the material facts it sets forth in the MSJ.   See Reply at 2.   Northland Piping contends that, once a movant meets its initial burden, "[t]he Plaintiff may not rest on the pleadings; instead, *it must set forth specific facts* showing there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."   Reply at 2 (citing Celotex Corp. v. Catrett, 477 U.S. at 324)(emphasis in Reply).   Northland Piping argues that American Mechanical's Response "relies entirely on its counsel's unsupported arguments instead of specific facts or evidence which would dispute Defendant's material facts."   Reply at 2.   It asserts that American Mechanical's vague references to "the evidence," and how it "will show" or "will prove," that Northland Piping has allegedly admitted the fittings were undercrimped and that the alleged hose failures were a result of its negligence is "vague and ambiguous at best, and lacks any specificity under the requirements of *Celotex* and Rule 56."   Reply at 2.   According to Northland Piping, because American Mechanical does not cite to anything in the record, it "has failed to place any admissible evidence in the record before this Court that would controvert NPP's undisputed material facts."   Reply at 3.   It further states that any alleged admissions are not in the record and that any alleged admissions from Unisource Manufacturing, which has settled out this matter, or a non-party, do not constitute admissions that would establish liability on Northland Piping's part.   See Reply at 3.   In sum, according to Northland Piping, "[u]nder Rule 56, these deficiencies alone in Plaintiff's Response render summary judgment in favor of Defendant NPP proper."   Reply at 3.

Northland Piping next argues that American Mechanical's "argument that some unspecified alleged admission by Defendant NPP regarding undercrimped fittings allows Plaintiff to forgo an expert is without merit and fails to meet Plaintiff's burden under Rule 56." Reply at 3. Northland Piping denies that it ever admitted the hoses were undercrimped or that any undercrimping caused the hoses to leak, and argues that American Mechanical has not offered any evidence into the record to support these statements. See Reply at 3-4. Northland Piping further states that, even if American Mechanical could produce some admission of liability on Northland Piping's part, "without expert testimony Plaintiff could not establish that undercrimping was the cause of any damage to Plaintiff AMS to defeat summary judgment," because a commercial cheese factory's physical operation and the cause of the failure of a commercial cheese plant hose are not subjects within a lay witness' knowledge. Reply at 4. Northland Piping states that American Mechanical does not submit any of the alleged "emails, pictures or voicemails," or any other evidence, to controvert Northland Piping's facts and allow it to forgo designation of an expert. Reply at 4. It further argues that American Mechanical "has likewise failed under Rule 26 to designate anyone from NPP, AMS, Southwest Cheese, Unisource or any other non-party principal or employee involved in the asserted documents as an expert who will render opinions on causation." Reply at 4. Northland Piping also takes issue with American Mechanical's attempt to show a genuine issue of material fact regarding damages, given that it cannot establish through expert testimony that Northland Piping caused its damages. See Reply at 5.

Finally, Northland Piping argues that American Mechanical's argument that Northland Piping must first supply its experts to allow American Mechanical "to determine what experts it

needs to prove its case inverts the burden of proof in a civil lawsuit."  Reply at 5.  According to

Northland Piping, American Mechanical brought this lawsuit, and it is its burden to establish

through expert testimony that the fittings were undercrimped, as it alleges, and that the alleged

undercrimping was the cause of American Mechanical's alleged damages.  See Reply at 5.

Northland Piping argues that only then would it have the burden of rebutting American

Mechanical's expert testimony with its own expert testimony.  See Reply at 5.  Northland Piping

rejects American Mechanical's contention that the issue whether the alleged undercrimping was

the cause of American Mechanical's alleged damages is a new argument that entitles it to

rebuttal experts.  See Reply at 5.  Rather, according to Northland Piping, it is "merely seeking to

require that Plaintiff meet its burden to establish causation, a basic and essential element of

Plaintiff's case."  Reply at 5.  It also maintains that American Mechanical is not entitled to a

second opportunity to retain experts.  See Reply at 6.

### 4. __The Hearing on the MSJ__.

The Court held a hearing on the MSJ on June 24, 2015.  The Court first expressed some

initial impressions of the MSJ.  See Tr. at 2:1-3:15 (Court).  It explained that the MSJ was

unusual in that it would normally have expected Northland Piping to file a motion saying that

there is no evidence of causation, tell the Court what the experts have said -- that there is a lack

of evidence -- and ask the Court to enter summary judgment.  See Tr. at 2:5-13 (Court).  The

Court stated that it seemed that all it could say about this case is that American Mechanical did

not disclose an expert in this case, but that one is required.  See Tr. at 2:14-19 (Court).  The

Court further explained that, if you had a case where there is a hose with a hole in it and

everybody can see it, that might be a circumstance where an expert would not be needed.  See

Tr. at 2:20-4 (Court).  By contrast, the Court explained, there are cases where you would need an expert and no layperson could testify about it.  See Tr. at 3:4-7 (Court).  The Court stated that it was concerned whether it had the factual basis here to determine whether American Mechanical can go forward without an expert.  See Tr. at 3:8-13 (Court).  The Court explained, however, that American Mechanical had also not produced any evidence for the Court to determine "whether this is a hole in the tubing and somebody could look at it and testify about it."  Tr. at 3:14-18 (Court).

Northland Piping then took up argument on the MSJ.  See Tr. at 3:24-4:4 (Court, Lewis). Northland Piping explained that part of the reason for the MSJ's unusual posture is that it is in the difficult position of having to incur a large expense to hire a defense expert to rebut what American Mechanical has failed to do -- it has not disclosed an expert, but instead will use lay testimony.  See Tr. at 4:4-13 (Lewis).  The Court asked whether that situation was something with which the Court could help, and Northland Piping responded that it was, because at the end of trial it would be able to move for a directed verdict for a failure of proof.  See Tr. at 4:20-24 (Lewis).  The Court responded that, by that point, it would have a more robust record to decide whether this is a case involving an obvious hole in the hoses or one in which only an expert can explain what happened.  See Tr. at 4:25-5:8 (Court).  Northland Piping emphasized that, looking at American Mechanical's Complaint, it repeatedly emphasizes the hoses' technical nature in this case and do not intimate that there is something that is an obvious defect in the hoses.  See Tr. at 5:17-7:19 (Lewis).  According to Northland Piping, "[t]hey've never alleged that this is some, like you said, pinhole leak or other problem in a tube."  Tr. at 6:14-19 (Lewis).  It explained that an average juror would not know "what a clarifier is, and as a result of this installation, there's

leaking in some of these hoses." Tr. at 7:1-19 (Lewis). Northland Piping maintained that the Complaint's allegations alone are enough to put it into the realm of needing technical knowledge, that American Mechanical did not allege an obvious defect, and that American Mechanical does not in its Response provide other evidence -- such as an affidavit or photograph -- indicating that this is an obvious pinhole leak such that expert testimony is not required. See Tr. at 2:5-13 (Lewis). Northland Piping further explained:

> Instead, they tried to say, well, obviously, it wasn't crimped properly.
>
> Well, how can you obviously say that? There's no layperson that can look at this industrial hose with a stainless steel fitting and say, oh, it's obviously undercrimped or they used the wrong die to crimp it. Those are all things that they've alleged in the Complaint.
>
> Unless they can in responding to summary judgment put it back into the realm of what the Court has described this morning, it seems to me that we have made a proper motion, and they had the opportunity to say, wait, wait, wait. Give us our chance to show we don't need an expert. They had a chance in responding, and they chose to do nothing. And our position is because they don't have anything to get there. It is a technical issue.

Tr. at 10:2-18 (Lewis).

American Mechanical then took up argument on the MSJ. See Tr. at 11:1-6 (Court, Demarco, Lewis). American Mechanical largely stuck to its briefing. See Tr. at 11:1-22:3 (Court, Demarco, Lewis). It argued that the hose in this case is like one a person would buy at Wal-Mart, the difference being one of scale. See Tr. at 11:1-6 (Court, Demarco, Lewis). It admitted that this fitting is a four-inch one, with a stainless steel hub[1] that has to be welded onto

---

[1]In plumbing, a hub is a "short piece of pipe with a bell at each end, used for joining pipes in line or at an angle." Hub, The Century Dictionary and Cyclopedia Volume IV (1899).

the spigot,[1] but maintained that, when it attached the hose to the pipe and the material began

flowing through, the hose completely blew off.  See Tr. at 11:1-13:21 (Demarco).  According to

American Mechanical, "the rubber separated from the ferrule[2] that was installed by -- by the

defendants."  Tr. at 11:1-6 (Demarco).  It contended that the first two hoses blew off as complete

failures, while there is a whole other group of hoses that leaked material.  See Tr. at 11:1-6

(Demarco).   American Mechanical also explained that, when this event happened, the

Defendants admitted that the problem was that the hoses were undercrimped.  See Tr. at 14:8-19

(Demarco).   The Court explained that, in a motion for summary judgment, the non-movant

would normally produce the deposition transcript, emails, or other evidence, but that here,

American Mechanical was "just telling me about it."  Tr. at 14:20-25 (Court).  The Court stated

that, "[a]t this stage, a motion for summary judgment, you've got to -- you've got to come

forward with competent, admissible evidence to tell me about this."  Tr. at 14:24-15:2 (Court).

American Mechanical maintained that it had submitted all of this evidence in discovery, but the

Court noted that it had not followed the rules for summary judgment in federal court by giving it

to the Court.  See Tr. at 15:3-16:10 (Court, Demarco).

        The Court expressed concern that, in addition to the fact that American Mechanical is not

producing an expert, any of the emails, admissions, or other evidence, American Mechanical had

not explained to the Court why it does not need an expert.  See Tr. at 16:14-25 (Court).  The

---

[1]A spigot is "a device for controlling the flow of liquid in a faucet" or "the plain end of a section of a pipe fitting into the socket of the next one."   Spigot, New Oxford American Dictionary (3d ed. 2010).

[2]A ferrule is a "ring or cap, typically a metal one, that strengthens the end of a handle, stick, or tube and prevents it from splitting or wearing" or "a metal band strengthening or forming a joint."  Ferrule, New Oxford American Dictionary (3d ed. 2010).

Court noted that, even if American Mechanical contends that the hoses' failure was "obvious," it needed to show that fact to the Court with an expert, the Defendants' admissions, or other evidence.  Tr. at 17:4-17 (Court).  American Mechanical stated that it had submitted copies of emails and voicemails at the settlement conference, but the Court explained that the district court judge is not involved in settlement.  See Tr. at 17:18-18:10 (Court).  The Court expressed concern that American Mechanical had not given it anything.  See Tr. at 17:18-18:10 (Court).  The Court further stated:

> [T]here are some products liability cases you've got to have an expert.  You sue a doctor for medical malpractice, you've got to have an expert.  You s[ue] a lawyer for legal malpractice, you've got to have an expert.  And most of my products liability cases, we've got well qualified experts on both sides, and -- and in -- in most products liability cases, you do have to have [one].  I can imagine a case in which you don't, but right now, I don't know if that's this case or not
>
> . . . .
>
> You -- you obviously think it is, but I think to avoid the summary judgment, you've got to show me that.  Because they think it is, and they've moved, saying this is that kind of case.  And I'm afraid what I'm going to have to do is write an opinion that says, I don't know anything about this case.  I don't have any evidence in front of me.  Nobody gave me anything in this case. . . .  [I]t sort of becomes like a motion to dismiss or motion on the pleadings.  Do you have to have an expert for that type of case?  And I don't know.  You might win that; you might lose that.  I don't know.  I'm going to have to study, I guess the Complaint to figure out what it is, because . . . I can't take your statements in your brief. . . .  I guess, what Mr. Lewis is inviting me to do is to go back to the Complaint, take your complaint 1st, take those allegations, plus the fact that you didn't give an expert, and he wants that to be an equal I dismiss the case.  And that seems to me to be where I am.  And . . . you're saying I do have evidence and don't need an expert, because I've got admissions or something.  But I can't write up that opinion for you because none of that is properly before me.
>
> So I think what the -- what the opinion is going to be is, since Mr. Lewis is inviting me to look at the Complaint . . . it's kind of a motion to dismiss, motion on the pleadings, plus a summary judgment, but the only additional fact is you didn't get an expert.  So taking the allegations in the Complaint, if I t[a]ke those and say, that's your theory, do you need [o]n that theory, an expert?  It seems to

me that's dangerous for you, not to have -- because it seems to me you've
probably . . . got a better argument, and your argument is you've got admissions
from the defendant that there is a product problem here.

Tr. at 19:3-21:6 (Court, Demarco).   The Court also expressed concern about American

Mechanical's contention that it would be testifying in the case as experts.   See Tr. at 21:18-22:3

(Court).   The Court explained that, under the federal rules, even if a party is not going to have a

retained expert, if people in the case are going to testify as experts, they still need to produce an

expert report, which has not been done in this case.   See Tr. at 21:18-22:3 (Court).   The Court

stated that it was concerned whether it can consider that possibility, because nobody has

informed the Court what those individuals are going to say.   See Tr. at 21:18-22:3 (Court).

The Court then asked Northland Piping if it had any response.   See Tr. at 22:9-12 (Court,

Lewis).   Northland Piping agreed that, taking the allegations in the Complaint, the Court would

be able to conclude that this case is one in which an expert would be required for it to proceed.

See Tr. at 22:9-12 (Court, Lewis).   It stated:

> One, the allegations, I believe, are sufficient to describe a very technical thing.
> This is not a garden hose from Walmart, and the allegations make that clear.   This
> is a very specialized industrial hose in a unique configuration on clarifiers in a
> cheese plant.   That's not a Walmart garden hose.
>
> But in addition to that, by filing this motion, we invited the plaintiffs
> under Rule 56 to tell us that this was not a technical specialized application, and it
> was a Walmart garden hose, and they didn't do that.   Had they come forward and
> submitted documentation to support what counsel has just said, that the failure of
> the hoses is obvious, we disagree with that.   We don't think it's obvious, but
> that's not our burden until they've met theirs.

Tr. at 22:24-23:14 (Lewis).

The Court then asked Northland Piping to comment on the allegation that it admitted

liability in this suit.   See Tr. at 23:15-19 (Court, Lewis).   Northland Piping clarified that,

although the MSJ was filed as a joint motion with the manufacturer, Unisource Manufacturing, also as a movant, by the time the Response was filed, Unisource Manufacturing was no longer a party, because it had reached a settlement with American Mechanical.  See Tr. at 23:20-24:9 (Court, Lewis).  Northland Piping further stated that only Northland Piping filed the Reply, and that, when in their Response, American Mechanical "say defendants, plural, made admissions . . . we dispute that we ever made any kind of admissions."  Tr. at 23:23-24:9 (Lewis).  Northland Piping explained that the emails or voice messages were from Unisource Manufacturing or other non-parties, and not from Northland Piping.  See Tr. at 24:10-27:23 (Court, Lewis).  Northland Piping again confirmed that the MSJ is more like a motion to dismiss or a motion for judgment on the pleadings.  See Tr. at 28:17-25 (Court, Lewis).

> THE COURT: Just -- just take the Complaint, which is a little unusual, because the defendants usually say, oh, you can't rely on the complaint.  You know, you can't rely on the complaint.  Summary judgment, you've got to come forward with the evidence.  So I guess what strikes me as a little unusual here, you're saying rely on the Complaint, which is a little different than what defendants usually do.  You're saying take the complaint.  So it's kind of like a motion to dismiss or motion on the pleadings.  Take the complaint and this one additional fact: They didn't name an expert, and therefore, they can't go forward because they've got to have an expert.  That's basically it?

> MR. LEWIS: I think so, Judge.  It really is a motion on the pleadings in that respect, because we're also taking the fact that they didn't bring an expert . . .

> But we're in this very unusual situation where we've got this specialized industrial hose and fitting and configuration that they want you to think of as a Walmart hose, but their Complaint doesn't characterize it as that.  They go to great lengths in their Complaint, I think, to show you how specialized this is and why they therefore have suffered all these resulting damages.  The fact that they didn't bring forth an expert, we believe, puts us in the position for the Court to be able to just look at the allegations in the pleading, and the fact that they don't have an expert to tell you that this is, as -- as was said here, the failure of the hose is obvious.

That could have been said in the Complaint. It wasn't. It could have been shown by evidence in the response if it existed. If it were so obvious, why is there not an affidavit, deposition, e-mail, something to show the Court that, well, look, here's a picture of it. It just -- it failed, and it's obvious? We think, even when he says that it came apart, that can be for lots of reasons other than the installation, including velocity of materials within this -- this clarifier.

But again, you don't have to go to all of those things, because they didn't do what they needed to in their pleading or in their response.

And you know, really, I think in fairness, we pointed all that out in our reply that they had just utterly failed to comply with Rule 56. That would have been a signal, I think, to move for leave to supplement the response or do something to get some -- evidence in the record.

Tr. 29:7-31:17 (Court, Lewis).

## <u>LAW REGARDING MOTIONS TO DISMISS UNDER RULE 12(b)(6)</u>

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." <u>Mobley v. McCormick</u>, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. <u>See</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); <u>Smith v. United States</u>, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." (citing <u>Moore v. Guthrie</u>, 438 F.3d 1036, 1039 (10th Cir. 2006))).

- 21 -

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   Ashcroft v. Iqbal, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp v. Twombly, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted).  The United States Court of Appeals for the Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(citations omitted).

Although affirmative defenses must generally be pled in the defendant's answer, not argued on a motion to dismiss, see Fed. R. Civ. P. 8(c), there are exceptions where: (i) the defendant asserts an immunity defense -- the courts handle these cases differently than other motions to dismiss, see Glover v. Gartman, 899 F. Supp. 2d 1115, 1137-39, 1141 (D.N.M. 2012)(Browning, J.)(citing Pearson v. Callahan, 555 U.S. 223 (2009); Robbins v. Oklahoma, 519 F.3d 1242 (10th Cir. 2008)); and (ii) where the facts establishing the affirmative defense are apparent on the face of the complaint, see Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)("Under Rule 12(b), a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim. If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule."). The defense of limitations is the affirmative defense most likely to be established by the uncontroverted facts in the complaint. See 5 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal Practice & Procedure: Civil § 1277 (3d ed. 2014). If the complaint sets forth dates that appear, in the first instance, to fall outside of the statutory limitations period, then the defendant may move for dismissal under rule 12(b)(6). See Rohner v. Union Pac. R.R. Co., 225 F.2d 272, 273-75 (10th Cir. 1955); Gossard v. Gossard, 149 F.2d 111, 113 (10th Cir. 1945); Andrew v. Schlumberger Tech. Co., 808 F. Supp. 2d 1288, 1292 (D.N.M. 2011)(Browning, J.). The plaintiff may counter this motion with an assertion that a different statute of limitations or an equitable tolling doctrine applies to bring the suit within the statute; the Tenth Circuit has not clarified whether this assertion must be pled with supporting facts in the complaint or may be merely

argued in response to the motion.  Cf. Kincheloe v. Farmer, 214 F.2d 604 (7th Cir. 1954)(holding

that, once a plaintiff has pled facts in the complaint indicating that the statute of limitations is a

complete or partial bar to an action, it is incumbent upon the plaintiff to plead, either in the

complaint or in amendments to it, facts establishing an exception to the affirmative defense).  It

appears, from case law in several circuits, that the plaintiff may avoid this problem

altogether -- at least at the motion-to-dismiss stage -- by simply refraining from pleading specific

or identifiable dates, see Goodman v. Praxair, Inc., 494 F.3d 458, 465-66 (4th Cir. 2007);

Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006); Harris v. New York, 186 F.3d 243,

251 (2d Cir. 1999); Honeycutt v. Mitchell, No. CIV 08-0140 W, 2008 WL 3833472 (W.D. Okla.

Aug. 15, 2008)(West, J.), and, although the Tenth Circuit has not squarely addressed this

practice, the Court has permitted it, see Anderson Living Trust v. WPX Energy Prod., LLC, 27

F. Supp. 3d 1188, 1235-36 (D.N.M. 2014)(Browning, J.).

### LAW REGARDING JUDGMENT ON THE PLEADINGS UNDER RULE 12(c)

"After the pleadings are closed -- but early enough not to delay trial -- a party may move

for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A rule 12(c) motion is designed to

provide a means of disposing of cases when the material facts are not in dispute between the

parties.  See Kruzitis v. Okuma Mach. Tool, Inc., 40 F.3d 52, 54 (3d Cir. 1994)("Under Rule

12(c), we will not grant judgment on the pleadings unless the movant clearly establishes that no

material issue of fact remains to be resolved and that he is entitled to judgment as a matter of

law."  (citation omitted)(internal quotation marks omitted)).  A "[j]udgment on the pleadings

should not be granted 'unless the moving party has clearly established that no material issue of

fact remains to be resolved and the party is entitled to judgment as a matter of law.'"  Park Univ.

Enters., Inc. v. Am. Cas. Co. of Reading, Pa., 442 F.3d 1239, 1244 (10th Cir. 2006)(citing United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000)).  Claims dismissed pursuant to a motion under rule 12(c) are dismissed with prejudice. See In re Great Lakes Dredge & Dock Co. LLC, 624 F3d 201, 209 (5th Cir. 2010).

"Any party may move for judgment on the pleadings if no material facts are in dispute and the dispute can be resolved on both the pleadings and any facts of which the Court can take judicial notice."  Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. at 304 (citing Fed. R. Civ. P. 12(c)).  A motion pursuant to rule 12(c) is generally treated in the same manner as a motion to dismiss under rule 12(b)(6).  See Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. at 304 (citing Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998)).  A motion for a judgment on the pleadings will be granted if the pleadings demonstrate that the moving party is entitled to judgment as a matter of law.  See Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. at 304.

A court considering a motion for judgment on the pleadings should "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same."  Park Univ. Enters. Inc. v. Am. Cas. Co. of Reading, Pa., 442 F.3d at 1244. The court must view the facts presented in the pleadings and draw the inferences therefrom in the light most favorable to the nonmoving party.  See Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. at 304.  All of the nonmoving parties' allegations are deemed to be true, and all of the movants' contrary assertions are taken to be false.  See Nat'l Metro. Bank v. United States, 323 U.S. 454, 456-57 (1945); Ramirez v. Dep't of Corr., 222 F.3d 1238, 1240 (10th Cir. 2000); Freeman v. Dep't of Corr., 949 F.2d 360, 361 (10th Cir. 1991).

The same standards that govern a motion to dismiss under rule 12(b)(6) also govern a motion for judgment on the pleadings under rule 12(c). See Atl. Richfield Co. v. Farm Credit Bank, 226 F.3d 1138, 1160 (10th Cir. 2000). Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the nonmoving party, and draw all reasonable inferences in the plaintiff's favor. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (citation omitted). "[T]he Supreme Court recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 558, 562). "The

[Supreme] Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(alterations omitted). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d at 1177. The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.
>
> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them. "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Bell Atl. Corp. v. Twombly, 127 S. Ct. at 1965 n.3. See Airborne Beepers & Video, Inc. v. AT&T Mobility LLC, 499 F.3d 663, 667 (7th Cir. 2007)("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."). The Twombly Court was particularly critical of complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies." 127 S. Ct. at 1971 n.10. Given such a complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations . . . would have little idea where to begin." Id.

Robbins v. Oklahoma, 519 F.3d at 1247-48 (footnote omitted)(citations omitted).

In determining the sufficiency of a complaint, all well-pleaded factual allegations are to be taken as true. See Timpanogos Tribe v. Conway, 286 F.3d 1195, 1204 (l0th Cir. 2002). "Nevertheless, conclusory allegations without supporting factual averments are insufficient to

state a claim upon which relief can be based." Hall v. Belman, 935 F.2d 1106, 1110 (l0th Cir. 1991). "Moreover, in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations." Hall v. Belman, 935 F.2d at 1110. Only well-pleaded facts, as distinguished from conclusory allegations, are admitted when considering a motion to dismiss for failure to state a claim upon which relief can be granted. See Smith v. Plati, 258 F.3d 1167, 1174 (10th Cir. 2001).

A court must convert a motion to dismiss into a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court," and "all parties . . . [are] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(d). Facts subject to judicial notice may be considered without converting a motion to dismiss into a motion for summary judgment. See Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276, 1279, n.1 (10th Cir. 2004)(citing 27A Federal Procedure, Lawyers' Ed. § 62:520 (2003)). Furthermore, when considering a motion to dismiss, "the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir.2000), abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001). A court may consider documents to which the complaint refers if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity. See Jacobsen v. Deseret Book Co., 287 F.3d 936, 941-42 (10th Cir. 2002). If, however, a document is not incorporated by reference or attached to the complaint, but the complaint refers to the document and the document is central to the plaintiff's claim, the defendant may submit an "indisputably authentic

copy to the court to be considered on a motion to dismiss." GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997). See 5A Charles Alan Wright & Arthur Miller, Federal Practice & Procedure § 1327 (3d ed. 2004)("[W]hen the plaintiff fails to introduce a pertinent document as part of her pleading . . . the defendant may introduce the document as an exhibit to a motion attacking the sufficiency of the pleading.").

## LAW REGARDING MOTIONS FOR SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'" Herrera v. Santa Fe Pub. Sch., 956 F. Supp. 2d 1191, 1221 (D.N.M. 2013) (Browning, J.)(quoting Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)). See Celotex Corp. v. Catrett, 477 U.S. at 323.

> Before the court can rule on a party's motion for summary judgment, the moving party must satisfy its burden of production in one of two ways: by putting evidence into the record that affirmatively disproves an element of the nonmoving party's case, or by directing the court's attention to the fact that the non-moving party lacks evidence on an element of its claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323-25. On those issues for which it bears the burden of proof at trial, the nonmovant "must go beyond the pleadings and designate specific facts to make a showing sufficient to establish the existence of an element essential to his case in order to survive summary judgment." Cardoso v. Calbone, 490 F.3d 1194, 1197 (10th Cir. 2007).

Plustwik v. Voss of Norway ASA, 2013 WL 1945082, at *1 (D. Utah May 9, 2013)(Sam,

J.)(emphasis added).[1]  "If the *moving* party will bear the burden of persuasion at trial, that party

---

[1]The Supreme Court's decision in Celotex Corp. v. Catrett, approved the award of no-evidence summary judgments in federal court.  See Celotex Corp. v. Catrett, 477 U.S. at 323-25.  Under the federal standard that Celotex Corp. v. Catrett sets forth, if the issue is one on which the movant does not bear the burden of proof, and an adequate time for discovery has passed, summary judgment is warranted if the non-movant does not make a showing sufficient to establish the existence of each element essential to its cause of action.  See 477 U.S. at 322-23.  The Supreme Court explained:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.  "[T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a) . . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.  But unlike the Court of Appeals, we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim.  On the contrary, Rule 56(c), which refers to "the affidavits, *if any*" (emphasis added), suggests the absence of such a requirement.  And if there were any doubt about the meaning of Rule 56(c) in this regard, such doubt is clearly removed by Rule 56(a) and (b), which provide that claimants and defendants, respectively, may move for summary judgment "*with or without supporting affidavits*" (emphasis added).  The import of these subsections is that, regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied.  One of the principal

---

must support its motion with credible evidence -- using any of the materials specified in Rule 56(c) -- that would entitle it to a directed verdict if not controverted at trial." Celotex Corp. v. Catrett, 477 U.S. at 331 (Brennan, J., dissenting)(emphasis in original).[1]  Once the movant meets this burden, rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial.  See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993) ("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.")(internal quotation marks omitted).  Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored

---

purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.

477 U.S. at 322-24.

[1]Although the Honorable William J. Brennan, Jr., Associate Justice of the Supreme Court of the United States, dissented in Celotex Corp. v. Catrett, this sentence is widely understood to be an accurate statement of the law.  See 10A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 2727, at 470 (3d ed. 1998)("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case.").

information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).  It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("[O]nce a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried." (citation omitted)(internal quotation marks omitted)).

Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l Ins. Co. v. Omer, No. CIV 07-2123 JAR, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(Robinson, J.)(citing Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006); Fed. R. Civ. P. 56(e)).  "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'" Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 250.  A mere "scintilla" of evidence will not avoid summary judgment. Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  Rather, there must be sufficient evidence on which the

fact finder could reasonably find for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539.  "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (citations omitted).  Where a rational trier of fact, considering the record as a whole, could not find for the nonmoving party, there is no genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind certain principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.  Second, the ultimate standard of proof is relevant for purposes of ruling on a summary judgment, such that, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 254.  Third, the court must resolve all reasonable inferences and doubts in the nonmoving party's favor, and construe all evidence in the light most favorable to the nonmoving party.  See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999); Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  Fourth, the court cannot decide any issues of credibility.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

There are, however, limited circumstances in which the court may disregard a party's version of the facts.  This doctrine developed most robustly in the qualified immunity arena.  In Scott v. Harris, 550 U.S. 372 (2007), the Supreme Court concluded that summary judgment was appropriate where video evidence "quite clearly contradicted" the plaintiff's version of the facts.  550 U.S. at 378-81.  The Supreme Court explained:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.  Fed. Rule Civ. Proc. 56(c).  As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. [at] 586-587 . . . (footnote omitted).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. [at] 247-248 . . . .  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.
>
> That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life.  Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him.  The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

Scott v. Harris, 550 U.S. at 380-81 (emphasis in original).

The Tenth Circuit applied this doctrine in Thomson v. Salt Lake County, 584 F.3d 1304 (10th Cir. 2009), and explained:

> [B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts."  York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008)

(quoting Scott, 550 U.S. at 380); see also Estate of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1258 (10th Cir. 2008).

Thomson v. Salt Lake Cnty., 584 F.3d at 1312 (brackets omitted).  "The Tenth Circuit, in Rhoads v. Miller, [352 F. App'x 289 (10th Cir. 2009)(Tymkovich, J.)(unpublished),[1]] explained that the blatant contradictions of the record must be supported by more than other witnesses' testimony[.]"   Lymon v. Aramark Corp., 728 F. Supp. 2d 1222, 1249 (D.N.M. 2010) (Browning, J.)(citation omitted), aff'd, 499 F. App'x 771 (10th Cir. 2012).

> In evaluating a motion for summary judgment based on qualified immunity, we take the facts "in the light most favorable to the party asserting the injury."  Scott v. Harris, 550 U.S. 372, 377 (2007).  "[T]his usually means adopting . . . the plaintiff's version of the facts," id. at 378, unless that version "is so utterly discredited by the record that no reasonable jury could have believed him," id. at 380.  In Scott, the plaintiff's testimony was discredited by a videotape that completely contradicted his version of the events.  550 U.S. at 379.  Here, there is no videotape or similar evidence in the record to blatantly contradict Mr. Rhoads' testimony.  There is only other witnesses' testimony to oppose his version of the facts, and our judicial system leaves credibility determinations to the jury.  And given the undisputed fact of injury, Mr. Rhoads' alcoholism and memory problems go to the weight of his testimony, not its admissibility . . . .  Mr. Rhoads alleges that his injuries resulted from a beating rendered without resistance or provocation.  If believed by the jury, the events he describes are sufficient to support a claim of violation of clearly established law under Graham v. Connor, 490 U.S. 386, 395-96 (1989), and this court's precedent.

---

[1]Rhoads v. Miller is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored.  However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court concludes that Rhoads v. Miller has persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion.

Rhoads v. Miller, 352 F. App'x at 291-92 (internal quotation marks omitted).  See Lymon v.

Aramark Corp., 728 F. Supp. 2d at 1249-50 (quoting Rhoads v. Miller, 352 F. App'x at 291-92).

In a concurring opinion in Thomson v. Salt Lake County, the Honorable Jerome A. Holmes,

United States Circuit Judge for the Tenth Circuit, stated that courts must focus first on the legal

question of qualified immunity and "determine whether plaintiff's factual allegations are

sufficiently grounded in the record such that they may permissibly comprise the universe of facts

that will serve as the foundation for answering the legal question before the court," before

inquiring into whether there are genuine issues of material fact for resolution by the jury.

584 F.3d at 1326-27 (Holmes, J., concurring)(citing Goddard v. Urrea, 847 F.2d 765, 770 (11th

Cir. 1988)(Johnson, J., dissenting))(observing that, even if factual disputes exist, "these disputes

are irrelevant to the qualified immunity analysis because that analysis assumes the validity of the

plaintiffs' facts").

### NEW MEXICO LAW REGARDING BREACH OF CONTRACT CLAIMS[1]

A contract is a legally enforceable promise that must consist of an offer, an acceptance,

consideration, and mutual assent.  See N.M.R.A., UJI 13-801.  A person may breach a contract

by failing to perform a contractual obligation when the performance is required, unless that

---

[1]The parties invoke the Court's diversity jurisdiction, so the Court looks to the forum state's choice-of-law rules to determine which state's substantive law to apply.  See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Pepsi-Cola Bottling Co. v. PepsiCo, Inc., 431 F.3d 1241, 1255 (10th Cir. 2005)("In a diversity action, we apply the substantive law of the forum state, including its choice of law rules.").  The Court therefore applies New Mexico choice-of-law principles in determining what substantive law to apply.  Ordinarily, New Mexico will apply the choice -- of law rule of *lex loci contractus* -- the law of the place of contracting -- to contracts issues.  See Carl Kelley Const. LLC v. Danco Tech., 656 F. Supp. 2d 1323, 1336 (D.N.M. 2009)(Browning, J.).  The parties have not provided the Court sufficient information to perform the choice-of-law analysis, but they have not disputed that New Mexico law applies.

performance is otherwise excused.  See N.M.R.A., UJI 13-822.  Incomplete performance is a

breach of contract.  See Cochrell v. Hiatt, 1981-NMCA-125, ¶ 6, 638 P.2d 1101, 1103-04

(holding that, where the contract called for the roof to be restored to a "healthy" state and

guaranteed the work for twenty-five years, because the roof leaked within the twenty-five year

period, the defendant's performance was incomplete, and the defendant was in breach of the

contract).   Under New Mexico law, "[t]he elements of a breach-of-contract action are the

existence of a contract, breach of the contract, causation, and damages."   Abreu v. N.M.

Children, Youth and Families Dep't, 797 F. Supp. 2d 1199, 1247 (D.N.M. 2011)(Browning, J.).

> [A] complaint on breach of contract must allege: (1) the existence of a valid and
> binding contract; (2) the plaintiff's compliance with the contract and his
> performance of the obligations under it; (3) a general averment of the
> performance of any condition precedent; and (4) damages suffered as a result of
> defendant's breach.

McCasland v. Prather, 1978-NMCA-098, ¶ 7, 585 P.2d 336, 338.

Applying these principles in Armijo v. N.M. Dep't of Transp., No. CIV. 08-0336

JB/ACT, 2009 WL 1329192 (D.N.M. Apr. 6, 2009)(Browning, J.), the Court found that a

plaintiffs' allegations failed to state a claim for breach of contract.  In support of the breach-of-

contract claim, the plaintiff asserted that "the Department would follow state employment

policies and procedure, and that the Department terminated him in breach of those policies

without just cause."  2009 WL 1329192, at *7.  The Court noted that the plaintiff did not

"indicate what contractual provisions or employment policies the Department breached," and did

not say "to what his employment contract entitles him or of what the Department deprived him."

2009 WL 1329192, at *7.  The Court found that there was "not enough . . . to determine whether,

if taken as true, the Complaint's allegations would support claims for breach of contract."  2009

WL 1329192, at *8.  On the other hand, the Court has previously determined that a pro se plaintiff sufficiently alleged that his counsel breached a contract for legal representation by alleging that his former counsel promised to represent the plaintiff at forfeiture proceedings, that the plaintiff paid the counsel, and that the counsel failed to represent the plaintiff.  See Archuleta v. City of Roswell, No. CIV 10-1224 JB/RHS, 2012 WL 4950324, at **16-17 (D.N.M. Sept. 30, 2012)(Browning, J.).

"Additionally, in spite of the general bar on punitive damages for breach-of-contract cases, the Supreme Court of New Mexico has recognized that punitive damages may be recoverable under some circumstances for a breach of contract."  Anderson Living Trust v. ConocoPhillips Co., LLC, No. CIV 12-0040 JB/LFG, 2013 WL 3456913, at *42 (June 28, 2013)(Browning, J.).  The Supreme Court of New Mexico stated in Romero v. Mervyn's, 1989-NMSC-081, 784 P.2d 991: "Our previous cases clearly establish that, in contract cases not involving insurance, punitive damages may be recovered for breach of contract when the defendant's conduct was malicious, fraudulent, oppressive, or committed recklessly with a wanton disregard for the plaintiff's rights."  1989-NMSC-081, ¶ 23, 784 P.2d at 998.  Punitive damages are not available when they are "predicated solely on gross negligence.  In addition to, or in lieu of, such negligence there must be evidence of an evil motive or a culpable mental state."  Paiz v. State Farm Fire & Cas. Co., 1994-NMSC-079, ¶ 25, 880 P.2d 300, 308 (internal quotation marks omitted).  The Supreme Court of New Mexico has defined "reckless disregard" sufficient for an award of punitive damages as "when the defendant knows of potential harm to the interests of the plaintiff but nonetheless utterly fails to exercise care to avoid the harm."  Paiz v. State Farm Fire & Cas. Co., 1994-NMSC-079, ¶ 26, 880 P.2d at 308 (citation and secondary

quotations omitted).   A defendant does not act with reckless disregard to a plaintiff's rights merely by failing "to exercise even slight care," absent the requisite "culpable or evil state of mind." Paiz v. State Farm Fire & Cas. Co., 1994-NMSC-079, ¶ 26, 880 P.2d at 308 (citation and secondary quotations omitted).   The New Mexico Civil Jury Instructions define the elements necessary for an award of punitive damages for a breach of contract as follows:

> If you find that _____ (*name of party making claim for punitive damages*) should recover compensation for damages, and if you further find that the conduct of _____ (*name of party whose conduct gives rise to a claim for punitive damages*) was [malicious], [reckless], [wanton], [oppressive], or [fraudulent], then you may award punitive damages.

N.M.R.A., UJI 13-861.

## LAW REGARDING BREACH OF WARRANTIES[1]

Under the Uniform Commercial Code ("UCC"), there are at least two warranties that the manufacturer makes: (i) the implied warranty of fitness for a particular purpose; and (ii) the implied warranty of merchantability.   In Perfetti v. McGhan Medical, the Court of Appeals of New Mexico, in considering the claim of an express warranty, stated: "Any express warranty made with respect to the surgeon would inure to plaintiff's benefit on the basis that the surgeon was acting as plaintiff's agent in the use of the prosthesis."   1983-NMCA-032, ¶ 26, 662 P.2d 646, 652.   The Court of Appeals found that there was no evidence of an express warranty that was breached.   See Perfetti v. McGhan Medical, 1983-NMCA-032, ¶ 35, 662 P.2d at 653.   In discussing the claim of an implied warranty, the Court of Appeals explained that the defendant was "incorrect in urging a congruence between products liability and the implied warranty of fitness for a particular purpose.   Products liability requires a defect . . . the implied warranty of

---

[1]The parties have not disputed in the briefing or at the hearing that New Mexico law applies to American Mechanical's breach of warranty claims.

fitness for a particular purpose does not require a defect." Perfetti v. McGhan Medical, 91983-NMCA-032, ¶ 44, 662 P.2d at 653.

      **1.**      **Breach of the Implied Warranty of Fitness for a Particular Purpose.**

      Under the UCC, it is the sale of goods that brings the implied-warranty provisions into operation. See Ortiz v. Gas Co., 1981-NMCA-128, ¶ 13, 636 P.2d 900, 903. A "sale" is defined as "the passing of title from the seller to the buyer for a price." N.M. Stat. Ann. 1978, § 55-2-106(1). To succeed on a breach of the implied warranty of fitness for a particular purpose, the plaintiff must prove: (i) a sale; (ii) that the seller had knowledge of the particular use for which a good was purchased; (iii) that the buyer relied on the seller's skill or judgment regarding the selection of goods; and (iv) that the buyer purchased a product with a particular purpose for that product in mind. See Spectron Dev. Lab. v. Am. Hollow Boring Co., 1997-NMCA-025, ¶ 40, 936 P.2d 852, 861 (citing N.M. Stat. Ann. 1978, § 55-2-314); Daniell v. Ford Motor Co., Inc., 581 F.Supp 728, 731 (D.N.M. 1984)(Baldock, J.)(citing N.M. Stat. Ann. 1978, § 55-2-314(2)(c)). N.M. Stat. Ann. 1978, § 55-2-315 provides:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

N.M. Stat. Ann. 1978 § 55-2-315. The Court of Appeals of New Mexico has stated that, under the implied warranty of fitness for a particular purpose, a plaintiff must prove: (i) that, at the time of contracting, the seller had reason to know the buyer's particular purpose for which the item was being ordered; (ii) that the buyer relied on the seller's skill or judgment; and (iii) that the item was not fit for that purpose. See Lieb v. Milne, 1980-NMCA-125, ¶ 11, 625 P.2d at 1237.

2.      **Breach of the Implied Warranty of Merchantability.**

New Mexico recognizes that the implied warranty of merchantability is implied by law and is independent of express warranties.  See International Paper Co. v. Farrar, 1985-NMSC-046, ¶ 13, 700 P.2d at 645.   To establish a claim for breach of the implied warranty of merchantability, a plaintiff must prove that the seller sold goods or products that failed to meet the statutory definition of "merchantable."  N.M. Stat. Ann. 1978, § 55-2-314; N.M.R.A. 2008, Civ. UJI 13-1430.  N.M. Stat. Ann. 1978, §  55-2-314 defines "merchantable":

> (1) Unless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.  Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
>
> (2) Goods to be merchantable must be at least such as:
>
>> (a) pass without objection in the trade under the contract description; and
>>
>> (b) in the case of fungible goods, are of fair average quality within the description; and
>>
>> (c) are fit for the ordinary purposes for which such goods are used; and
>>
>> (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
>>
>> (e) are adequately contained, packaged and labeled as the agreement may require; and
>>
>> (f) conform to the promises or affirmations of fact made on the container or label if any.
>
> (3) Unless excluded or modified (Section 2-316) other implied warranties may arise from course of dealing or usage of trade.

N.M. Stat. Ann. 1978, § 55-2-314.  A supplier breaches this warranty if the product is defective and is not fit for the ordinary purposes for which such product is used.  See Pac. Indem. Co. v.

Therm-O-Disc, Inc., 476 F. Supp. 2d 1216, 1225 (D.N.M. 2006)("A manufacturer must use ordinary care in the designing, making, inspecting, and packaging of the product.  N.M.R.A. 2006, UJI 13-1410.   Ordinary care is that care which a reasonably prudent supplier would use in the conduct of its business.")(citing N.M.R.A. 2006, UJI 13-1404).

"[A] supplier breaches this warranty if the product is defective and is not fit for the ordinary purposes for which such product is used."  Pacific Indem Co. v. Therm-O-Disc, Inc., 476 F. Supp. 2d at 1225 (citing N.M.R.A. 2006, UJI 13-1450[3])).   A breach of the implied warranty of merchantability claim "thus requires proof of a defect."  Pacific Indem Co. v. Therm-O-Disc, Inc., 476 F. Supp. 2d 1216, at 1225 (citing Perfetti v. McGhan Medical, 1983-NMCA-032, ¶ 44, 662 P.2d 646, 654).   Moreover, a breach of the implied warrant of merchantability claim also requires proof of proximate cause.  See N.M. Stat. Ann. 1978, § 55-2-314 cmt. 13; Jesko v. Stauffer Chemical Co., 1976-NMCA-117, 558 P.2d 55.  Comment 13 to § 55-2-314 states: "In an action based on breach of warranty, it is of course necessary to show not only the existence of the warranty but the fact that the warranty was broken and that the breach of the warranty was the proximate cause of the loss sustained."  N.M. Stat. Ann. 1978, § 55-2-314 cmt. 13 (emphasis added).   New Mexico Uniform Civil Jury Instruction No. 130-1430 provides:

> A supplier breaches the implied warranty of merchantability:
>
> [1. If the goods sold would be rejected by someone knowledgeable in the trade for failure to meet the contract description]; [or]
>
> [2. If goods sold in bulk are not of fair average quality for the type of goods described by the contract. The goods need not be the best quality but they must pass without objection in the trade]; [or]

[3. If the [goods] [products] are defective and are not fit for the ordinary purposes for which such [goods] [products] are used]; [or]

[4. If the goods do not run within variations permitted by the contract for the reason that there are wide differences in type, quality and quantity within delivered units and among all units involved]; [or]

[5. If the [goods] [products] are not adequately contained, packaged and labeled as required by the contract]; [or]

[6. If the [goods] [products] do not conform to the promises or statements made by the seller on the container or label]; [or]

[7. If the food or drink is unwholesome or unfit for human consumption].

N.M.R.A. 2008, Civ. UJI 13-1430.  The directions for use of this instruction state: "Select the bracketed material which fits the actual issues and evidence involved in the case.  With this instruction, UJI 13-1429 must also be used.  This list of items is not exclusive.  Reference should be made to the Uniform Commercial Code 55-2-314 N.M. Stat. Ann. 1978 for further specifications."

## LAW REGARDING EXPERT TESTIMONY AND CAUSATION[1]

Like most other jurisdictions in the United States, New Mexico requires expert testimony to show causation in professional malpractice cases where it cannot be determined by common knowledge that an average person ordinarily possesses.  New Mexico has also expanded this rule to cases involving crashworthiness, negligent installation, and stray voltage cases.  In general, New Mexico, along with other jurisdictions, has required expert testimony when the issue of causation is presented in a context which is not a matter of common knowledge.  Moreover, New Mexico law would require expert testimony on causation in breach-of-contract claims, and proximate causation in breach-of-the-implied-warranty-of-merchantability claims where it is beyond the common knowledge that an average person ordinarily possesses.[2]  For breach-of-the-

_____

[1]In Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), the Supreme Court "held that federal courts adjudicating diversity jurisdiction claims should apply substantive state law and federal procedural law."  Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1539 (10th Cir. 1996).  Although "the line between substance and procedure has proven difficult to demarcate," Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d at 1539, the Tenth Circuit has observed that "[t]he propriety of summary judgment in federal diversity cases must be evaluated in light of the Federal Rules of Civil Procedure rather than state procedural law but with reference to the state's substantive law."  C.F. Braun & Co. v. Oklahoma Gas & Elec. Co., 603 F.2d 132, 133 n.1 (10th Cir. 1979)(citing Hanna v. Plumer, 380 U.S. 460 (1965)).  Moreover, the Tenth Circuit has treated the question whether a plaintiff must produce expert testimony on causation as a question of substantive state law.  See Zuls v. United States, 50 F.3d 838 (Table), 1995 WL 397067, at *2 (10th Cir. 1995).  Accordingly, the Court looks to substantive New Mexico law to determine whether expert testimony on causation is required in breach of contract and breach of implied warranty cases.

[2]Under the Erie doctrine, federal courts sitting in diversity must apply the substantive law of the state that would otherwise have jurisdiction over the claims at issue.  See Erie R.R. Co. v. Tomkins, 304 U.S. at 78; Gasperini v. Ctr. For Humanities, Inc., 518 U.S. 415, 427 (1996).  In the absence of an authoritative pronouncement from the highest court, a federal court's task under the Erie doctrine is to predict how the state's highest court would rule if presented with the same case.  See Wade v. EMCASCO Ins. Co., 438 F.3d 657, 666 (10th Cir. 2007).  The federal court "must follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently."  Stoner v. New York Life

implied-warranty-of-fitness-for-a-particular-purpose claims, however, New Mexico law would not require expert testimony on causation, because causation is not a prima facie element of the claim.

1.      **Expert Testimony on Causation in Professional Malpractice Cases.**

Under New Mexico law, expert testimony is generally required to show causation in professional malpractice cases.  See Buke, LLC v. Cross Country Auto Sales, LLC, 2014-NMCA-078, ¶ 53, 331 P.3d 942, 955.  The Supreme Court of New Mexico explained in Cervantes v. Forbis, 1964-NMSC-022, 389 P.2d 210:

> Before a physician or surgeon can be held liable for malpractice in the treatment of his patient, he must have departed from the recognized standards of medical practice in the community, or must have neglected to do something required by those standards.  The fact that a poor result is achieved or that an unintended incident transpired, unless exceptional circumstances are present, does not establish liability without a showing that the result or incident occurred because of the physician's failure to meet the standard either by his acts, neglect, or inattention. Such facts must generally be established by expert testimony. Likewise, expert testimony is generally required to establish *causal connection.*

1964-NMSC-022, ¶ 12, 389 P.2d at 213 (emphasis added)(citations omitted).  This rule applies to physicians and surgeons, as well as to chiropractors.  Mascarenas v. Gonzales, 1972-NMCA-062, ¶ 6, 497 P.2d 751, 751-52.  "However, where negligence on the part of the doctor is demonstrated by facts which can be evaluated by resort to common knowledge, expert testimony

_____

Ins. Co., 311 U.S. 464, 467 (1940).  To predict how the state's highest court would rule, the federal court "may seek guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and 'the general weight and trend of authority' in the relevant area of law."  Wade v. EMCASCO Ins. Co., 438 F.3d at 666 (citations and internal quotation marks omitted).

is not required."   Mascarenas v. Gonzales, 1972-NMCA-062, ¶ 6, 497 P.2d at 751 (emphasis

added).

> Should the condition be such that knowledge about it is peculiarly within the knowledge of medical men, then a court should not allow a jury to conjecture or speculate about the matter.   A manipulation of the spine which results in four fractured ribs is not a condition peculiarly within the knowledge of medical men.

Mascarenas v. Gonzales, 1972-NMCA-062, ¶ 6, 497 P.2d at 752 (emphasis added).   The

Supreme Court of New Mexico summarized the exception to the expert testimony requirement in

Toppino v. Herhahn, 1983-NMSC-079, 673 P.2d 1297:

> It is not mandatory in every case that negligence of the doctor be proved by expert testimony which shows a departure from reasonable standards of care. Negligence of a doctor in a procedure which is peculiarly within the knowledge of doctors, and in which a layman would be presumed to be uninformed, would demand medical testimony as to the standard of care.   However, if negligence can be determined by resort to common knowledge ordinarily possessed by an average person, expert testimony as to standards of care is not essential.

1983-NMSC-079, ¶ 14, 673 P.2d at 1301 (emphasis added).

New Mexico courts apply the rule announced in Cervantes v. Forbis, 1964-NMSC-022, ¶

12, 389 P.2d 210, 213, to malpractice claims against lawyers, see Sanders v. Smith, 1972-

NMCA-016, ¶¶ 12-14, 496 P.2d 1102, 1104, architects, and accountants, see Buke, LLC v. Cross

Country Auto Sales, LLC, 2014-NMCA-078, ¶ 53, 331 P.3d at 955.   The Court of Appeals of

New Mexico explained in Buke, LLC v. Cross Country Auto Sales, LLC: "We have not

previously extended to accountant malpractice cases the principles we apply to physicians,

attorneys, and architects concerning the necessity for expert testimony. . . .   Accordingly, we

hold that the same principles that govern the necessity for expert testimony in other kinds of

professional malpractice cases apply to accountant malpractice cases."   2014-NMCA-078, ¶ 53,

331 P.3d at 955.

Other jurisdictions impose this requirement in professional malpractice cases.  See, e.g., Wayt v. Miller, 2002 WL 32443035 (D. Wyo. 2002)(Downes, J.)(explaining that, under Wyoming law, litigants must prove proximate causation through expert witness testimony for a legal malpractice claim); Meyer v. Mulligan, 889 P.2d 509, 516 (Wyo. 1995)(Cardine, J.)(explaining that, under Wyoming law, a plaintiff must prove proximate cause through expert opinion in both medical and legal malpractice cases); Star Broad. Inc. v. Reed Smith Ltd. Liab. P'ship, 2009 WL 482833 (E.D. Va. 2009)(Hilton, J.)(stating that, under Virginia law, expert testimony is required to establish proximate cause in medical, legal, and accounting malpractice cases); Money v. Manville Corp. Asbestos Disease Comp. Trust Fund, 596 A.2d 1372 (Del. 1991)(Holland, J.)(stating that medical malpractice suits usually require expert medical testimony to support a jury's finding of negligence and causation); Momah v. Massena Memorial Hosp., 2000 WL 306774, at *4 (N.D.N.Y. 2000)(Mordue, J.)(explaining that, as a general matter, in a legal malpractice claim, under New York law, a plaintiff must introduce expert testimony to establish proximate cause); Vadovsky v. Treat, 2010 WL 3766810, at *1-2 (M.D. Pa. Sept. 21, 2010)(Conner, J.)(granting summary judgment for the defendants and explaining that, under Pennsylvania law, expert testimony is required to establish a legal malpractice claim, unless the issues are "simple, and the lack of skill obvious," such that "the ordinary experience and comprehension of law persons" would be sufficient).

Like New Mexico, most other jurisdictions recognize an exception to the expert testimony requirement in professional malpractice cases where the evidence of the elements of liability "clearly lies within the range of the jury's common knowledge and experience."  Star Broad. Inc. v. Reed Smith Ltd. Liab. P'ship, 2009 WL 482833, at *8.  See, e.g., Meyer v.

Mulligan, 889 P.2d at 516 ("However, '[a]n exception exists . . . when a lay person's common sense and experience are sufficient to establish the standard of care.'"); Momah v. Massena Memorial Hosp., 2000 WL 306774, at *4 ("The rare exception occurs where the ordinary experience of the fact-finder provides sufficient basis for judging the adequacy of the attorney's professional service.").

### 2. Expert Testimony on Causation in Crashworthiness, Negligent Installation, and Stray Voltage Cases.

New Mexico has extended the reasoning of Cervantes v. Forbis, 1964-NMSC-022, 389 P.2d 210, and its progeny to crashworthiness, negligent installation, and stray voltage cases. Duran v. Gen. Motors Corp., 1983-NMCA-121, 688 P.2d 799, overruled on other grounds by Brooks v. Beech Aircraft Corp., 1995-NMSC-043, 902 P.2d 54, involved an action against General Motors Corporation and Santa Fe Motors to recover damages for personal injuries sustained in a one-vehicle accident allegedly resulting from design as well as manufacturing defects which the plaintiff alleged rendered the vehicle not crashworthy.   See Duran v. Gen. Motors Corp., 1983-NMCA-121, ¶ 2, 688 P.2d at 780.   The Defendants appealed, arguing that the trial court erred in refusing to grant a directed verdict, because, among other things, the plaintiff did not prove that the alleged defects proximately caused her injuries.   See 1983-NMCA-121, ¶ 3, 688 P.2d at 780.   The plaintiff argued that, even without expert testimony, there was sufficient evidence from which the jury could infer that the defects caused her injury.   See 1983-NMCA-121, ¶ 47, 688 P.2d at 790.   The Court of Appeals of New Mexico disagreed, explaining:

> Without expert testimony, the jury would be left to stack inferences upon inferences.   This is impermissible under prior holdings.   *Adamson v. Highland Corporation*, 80 N.M. 4, 450 P.2d 442 (Ct. App. 1969); *Lovato v. Plateau*, 79

N.M. 428, 444 P.2d 613 (Ct. App. 1968).  To reach a finding that the inch or so additional intrusion caused Lorraine Duran's injuries would require speculation and conjecture.  Moreover, in this highly technical area expert proof is essential.  To hold otherwise here would allow the jury to decide the very question which plaintiff's expert could not answer.  *See Curtis General Motors Corp.*, 649 F.2d 808 (10th Cir. 1981).

We hold that the jury could have no basis other than conjecture, surmise or speculation upon which to consider whether Lorraine Duran's injury occurred as a result of the added intrusion of the rear header or as a result of the unavoidable intrusion.

When there is no fact question for the jury to pass upon or when the court, in the exercise of its sound discretion, would be required to set aside a verdict favorable to one side rather than the other, the court should direct a verdict.  *Landers v. Atchison, Topeka & Santa Fe Railway Co.*, 68 N.M. 130, 359 P.2d 522 (1961).  That drastic action is required here.

Duran v. Gen. Motors Corp.,1983-NMCA-121, ¶¶ 48-50, 688 P.2d at 790 (emphasis added).

Similarly in Romero v. State, 1991-NMCA-042, 814 P.2d 1019, aff'd in part and rev'd in part by Romeo v. State, 1991-NMSC-071, 815 P.2d 628, on cross-appeal, the plaintiffs in a case involving a single-vehicle accident contended that the trial court should not have permitted the defendants' expert accident reconstructionist to give his opinion that three contributing causes of the accident were: (i) low air pressure in one of the tires; (ii) passenger interference with the driver; and (iii) driver inattentiveness.  See 1991-NMCA-042, ¶¶ 1, 35, 814 P.2d at 1021, 1028-29.  The plaintiffs also asserted that the trial court should have permitted them to cross-examine the witness with respect to the possibility that an oncoming vehicle was the accident's cause. See 1991-NMCA-042, ¶ 35, 814 P.2d at 1028-29.  Before discussing whether the district court was within its discretion to permit the defendants' expert to testify on these matters, the Court of Appeals of New Mexico discussed whether expert testimony is a necessary predicate for testimony concerning how certain factors could have contributed to the accident, stating:

To evaluate the propriety of the district court's rulings on these evidentiary matters, we must first analyze the purpose of the tendered evidence.  No one testified as an eyewitness to the accident.  The jury was required to determine the causes of the accident by reviewing circumstantial evidence.  <u>Expert testimony was not necessary for the jury to reach a verdict.  Automobiles and highways are sufficiently familiar to the ordinary citizen that in general we would not *require* a finding of, say, causation to be predicated on an expert opinion that a particular factor was a probable cause of the accident.</u>  *Cf. Cervantes v. Forbis*, 1964-NMSC-022, 389 P.2d 210 (in medical malpractice case, questions of doctor's negligence and causation ordinarily must be proved by expert testimony); J. Weinstein & M. Berger, *Weinstein's Evidence* §§ 702[02], 702-10 to -15 (1990) (expert testimony sometimes necessary as a matter of substantive law).  The purpose of expert testimony in this type of case is to assist the jury to understand how factors supported by evidence could contribute to the accident.  Although the expert witness may also have sufficient expertise, based on training and experience, to testify to a probable sequence of events or a probable cause of the accident, such expert testimony is not a necessary predicate for testimony concerning how particular factors could contribute to an accident.

1991-NMCA-042, ¶ 36, 814 P.2d at 1028-29 (emphasis added).

While the Court of Appeals of New Mexico in <u>Romero v. State</u> concluded that expert testimony was not required in this particular case, it did not reject the rule that the Supreme Court of New Mexico announced in <u>Cervantes v. Forbis</u>, and which the Court of Appeals of New Mexico expanded to the crashworthiness context in <u>Duran v. GMC</u>.  <u>See</u> <u>Curtis v. GMC Corp.</u>, 649 F.2d 808, 813 (10th Cir. 1981).  Rather, the Court of Appeals of New Mexico in <u>Romero v. State</u> concluded that "automobiles and highways are sufficiently familiar to the ordinary citizen." 1991-NMCA-042, ¶ 36, 814 P.2d at 1028-29.  In other words, just like in the professional malpractice context, expert testimony on causation is not required in the products liability or accident context where an average person can determine causation by resort to common knowledge that an average person ordinarily possesses.

New Mexico has also applied the principles of <u>Cervantes v. Forbis</u> and its progeny to the issue of causation in negligent installation or stray voltage cases.  <u>See</u> <u>Loper v. JMAR</u>, 2013-

- 50 -

NMCA-098, 311 P.3d 1184 (collecting cases that discuss whether expert testimony is required in stray voltage cases). In Loper v. JMAR, the Court of Appeals of New Mexico provided an overview of how courts in Missouri, Michigan, and Iowa have analyzed the circumstances under which expert testimony on causation is required in negligent installation or stray voltage cases. See 2013-NMCA-098, ¶¶ 40-41, 311 P.3d at 1194-95. The Court of Appeals explained:

> In *Hoover's Dairy, Inc.*, a dairy farmer obtained a jury verdict against the distributor and seller of the milking system for negligence in failing to test for stray voltage during its installation. 700 S.W.2d at 428. The evidence showed that it had become generally known in the industry that a potential stray voltage problem can result when installing a milking system. *Id.* at 429. Further, the consequence of electrical shocks resulting from stray voltage "is that the cows become nervous during milking time and may not give all their milk. If milk remains in a cow's udder, it may lead to a bacterial infection called mastitis." *Id.* Several weeks after the system was installed, the milking time of the cows increased, the cows became nervous upon entering the barn, and there was an increase in an infection of mastitis in the cows. *Id.* at 430. After observing that proof of proximate cause may be established by either direct or circumstantial evidence, the court held that the evidence was sufficient to support the jury's finding of causation. *Id.* at 434. Specific to our case, the court said:
>
> > [F]acts were introduced from which the jury could conclude that stray voltage was present and caused the increase in mastitis. <u>A number of expert witnesses</u> and numerous publications indicated that stray voltage could cause mastitis in dairy cows, a fact virtually undisputed at trial. The symptoms commonly observed as incidents to stray voltage were observed on respondent's dairy farm within weeks after the installation. Additionally, there was a dramatic increase in mastitis shortly after the installation and there was a[n] amelioration of the problem after eliminating the stray voltage. The issue, therefore, was properly a jury question.
>
> *Id.* (footnote omitted)(emphasis added).
>
> Likewise, in *Carpenter v. Consumers Power Co.*, 230 Mich. App. 547, 584 N.W.2d 375 (1998), *vacated on other grounds by* 463 Mich. 1, 615 N.W.2d 17 (2000), the dairy farmer obtained a jury verdict against a power company for negligence in failing to discover and remedy stray voltage. In this case, that evidence showed that cows may be reluctant to enter a barn where stray voltage is present and that during milking, they may kick the milking equipment and people.

*Id.* at 378.  In addition, they will produce less milk and will produce milk unevenly, leaving milk in the udders, causing mastitis.  *Id.*  The dairy farmer's cows exhibited these symptoms, and after the stray voltage problem was corrected, the cows' behavior returned to normal.  *Id.* at 378-79.  On appeal, the power company argued that the evidence "merely demonstrated that stray voltage was present, but did not demonstrate any act or omission on the part of [the power company] that caused harm to [the dairy farmer]."  *Id.* at 382.  The court disagreed and concluded that the evidence supported the jury's finding that the power company's negligence was the proximate cause of the dairy farmer's damages, stating:

> There was also sufficient evidence to support a finding that defendant's breach of its duty was the proximate cause of plaintiffs' injuries.  Expert witnesses, as well as defendant's own pamphlet concerning the effects of stray voltage on dairy farms, discussed the symptoms caused by the effects of stray voltage in cows.  The cows . . . displayed these symptoms.  Furthermore, there was evidence that [the] plaintiffs' milk production decreased in the years before the correction of the voltage problem.  Therefore, the trial court did not err in denying [the] defendant's motion for JNOV.

*Id.* at 382.  In *Schlader*, the court concluded that expert testimony was not needed in a stray voltage case.  591 N.W.2d at 14.  It reasoned that while the subject of stray voltage is technical, the nature of electricity and the results of contact with it by humans and animals is not beyond a common person's understanding.  *Id.*  In reversing summary judgment, the court said:

> A fact question is generated if reasonable minds can differ on how the issue should be resolved.  The [plaintiffs] cited evidence by the milking equipment supplier that he discerned the voltage problems on their farm.  There were also depositions of analysts reciting that the isolator or block installed by [the defendant] did decrease the voltage in the [plaintiffs'] milking parlor.  There was also testimony from a veterinarian that related the health problems experienced by the [plaintiffs'] dairy herd.  He also noted the improvement in the milking herd after the block or insulator was installed.  According the [plaintiffs'] 'every legitimate inference' from their evidence, it cannot be said they have failed to show injuries to the dairy herd resulting from electric voltage in the milking parlor.

*Id.*

2013-NMCA-098, ¶¶ 40-41, 311 P.3d at 1194-95.

Other jurisdictions have adopted this approach, holding that, when the issue of causation is presented in a context which is not a matter of common knowledge, expert testimony is required.  See, e.g., Money v. Manville Corp. Asbestos Disease Compensation Trust Fund, 596 A.2d 1372 (Del. 1991)(Holland, J.)(holding that the causal nexus between exposure to an asbestos product or various asbestos products, and a particular asbestos-related disease, is not a matter of common knowledge and that expert testimony on causation was therefore required); Mazda Motor Corp. v. Lindahl, 706 A.2d 526, 533 (Del. 1988)(Chandler, J.)(holding that the absence of expert testimony on proximate cause in a crashworthiness case will prevent the issue from ever reaching the jury).

### 3.   Expert Testimony on Causation in Breach of Contract and Breach of Warranty Cases.

The Court concludes that New Mexico law would likely require expert testimony on causation and/or proximate causation where it is not a matter of common knowledge that the average person would ordinarily possess in breach-of-contract and breach-of-the-implied-warranty-of-merchantability claims.  Because neither causation nor proximate causation are prima facie elements in a breach-of-the-implied-warranty-of-fitness-for-a-particular-purpose claim, however, the Court concludes that a plaintiff need not produce expert testimony on causation or proximate causation to survive summary judgment in a breach-of-the-implied-warranty-of-fitness-for-a-particular-purpose claim.

### a.   Expert Testimony in Breach of Contract Cases.

Under New Mexico law, "[t]he elements of a breach-of-contract action are the existence of the contract, breach of the contract, causation, and damages."  Abreu v. N.M. Children, Youth

and Families Dep't, 797 F. Supp. 2d at 1247 (citing Camino Real Mobile Home Park P'Ship v. Wolfe, 891 P.2d at 1196, overruled on other grounds by Sunnyland Farms, Inc. v. Central N.M. Elec. Co-op., Inc., 2013-NMSC-017, 301 P.3d 387)).   The Court has found no New Mexico cases addressing whether a plaintiff must provide expert testimony on causation in a breach of contract claim in order to survive summary judgment.   A faithful reading of Cervantes v. Forbis and its progeny in the professional malpractice, crashworthiness, and negligent installation or stray voltage cases, suggests, however, that when the issue of causation is presented in a breach of contract context in which causation cannot be determined by resort to common knowledge that an average person ordinarily possesses, New Mexico law requires expert testimony.   See, e.g., Money v. Manville Corp. Asbestos Disease Comp. Trust Fund, 596 A.2d 1372.   This view is supported by the Supreme Court of New Mexico's decision in Adobe Masters, Inc. v. Downey, 1994-NMSC-101, 883 P.2d 133, where it held that in professional negligence cases based on breach of the implied warranty to use reasonable skill under contract law, a finding of malpractice must be proved by expert testimony unless the case is one where exceptional circumstances within the common experience or knowledge of a layman are present.   See Adobe Masters, Inc. v. Downey, 1994-NMSC-101, ¶ 9, 883 P.2d at 135.

That expert testimony on causation is required in breach of contract cases outside of the professional malpractice context where causation is beyond the common knowledge that an average person ordinarily possesses is supported by decisions from other jurisdictions.   See Racine Cty. v. Oracular Milwaukee, Inc., 323 Wis.2d 682, 781 N.W.2d 88 (Wis. 2010).   In Racine Cty. v. Oracular Milwaukee, Inc., Racine County alleged that Oracular, a computer systems and programming consultant, breached the parties' Consulting Service Agreement.   See

323 Wis. 2d at 686, 781 N.W.2d at 90.  The trial court granted summary judgment in favor of Oracular on the grounds that Racine County's failure to name an expert witness entitled Oracular to summary judgment as a matter of law.  See 323 Wis.2d at 686, 781 N.W.2d at 90.  According to the trial court, "the Agreement was effectively a contract for professional services, for which the basis of liability is a claim of negligence" and Racine County "was therefore required to present expert testimony in order to demonstrate that Oracular's performance fell below the standard of care in the computer consulting industry."  See 323 Wis. 2d at 686, 781 N.W.2d at 90.  The court of appeals reversed, concluding that Racine County need not present expert testimony "because Oracular's alleged breaches of the Agreement were within the realm of the average juror's ordinary experience."  See 323 Wis.2d at 686, 781 N.W.2d at 90.

Oracular appealed to the Supreme Court of Wisconsin, which affirmed the Court of Appeals' decision, though on different grounds, concluding that Racine County was not required to name an expert witness to survive summary judgment under this case's facts.  See 323 Wis.2d at 687-88, 781 N.W.2d at 90-91.  The Supreme Court of Wisconsin explained:

> In this case, in order to survive summary judgment, Racine County was not required to name an expert witness.  As a preliminary point, Racine County alleged breach of contract, not negligence.  There is no allegation that Oracular's performance failed to meet the standards of the computer consulting industry -- whatever those may or may not be.  Accordingly, the issue is not whether Racine County is required to present expert testimony in order to demonstrate that Oracular's performance fell below the industry standard of care.  Instead, the issue is whether in order to survive summary judgment, Racine County was required to name an expert witness when the complaint alleged that Oracular breached the parties' Agreement.
>
> As it was alleged in the complaint and presented in the affidavits, Racine County's breach of contract claim does not present issues so "unusually complex or esoteric," White, 149 Wis.2d at 960, 440 N.W.2d 557, as to demand the assistance of expert testimony.  See Wis. Stat. § 907.02.  Rather, the alleged breaches concern matters of common knowledge and are within the realm of

ordinary experience. *See Netzel*, 51 Wis.2d at 6, 186 N.W.2d 258; *Cramer*, 45 Wis.2d at 150, 172 N.W.2d 427. In particular, Racine County alleges that Oracular breached the Agreement by not completing the project on time and by failing to provide competent training. On those alleged breaches, the trier of fact is capable of drawing its own conclusions without the assistance of expert testimony. *See Cramer*, 45 Wis.2d at 151, 172 N.W.2d 427; Wis. Stat. § 907.02.

Based on its affidavits, Racine County intends to produce evidence that Oracular breached the Agreement by not completing the project on time. Racine County will argue that the Agreement expressly states that "[p]roject completion of Phase 1 through Phase 3 shall be started in a staggered approach with a combined Go–Live goal of September 7, 2004." If September 7, 2004, was intended as the project deadline, *see* discussion of "Genuine Issues of Material Fact" *infra* Part III.B., the fact-finder is capable of determining for itself whether the project was indeed completed by that time. Similarly, the fact-finder can evaluate whether the deadline was repeatedly modified and repeatedly missed, as Racine County intends to argue. The question of whether the software installation project was completed by a specified date is distinct from the complexity of the work that goes into the installation -- complexity that Racine County concedes. The former is not so "unusually complex or esoteric," *White*, 149 Wis.2d at 960, 440 N.W.2d 557, as to require the assistance of expert testimony. *See* Wis. Stat. § 907.02.

Racine County also intends to produce evidence that Oracular breached the Agreement by failing to provide competent training. As shown in the affidavits, several Racine County employees will testify that one of Oracular's training consultants was herself unfamiliar with the software and that Oracular's project manager admitted that the project was staffed for failure. Based upon that evidence, the fact-finder is capable of drawing upon common knowledge and ordinary experience to determine whether Oracular provided competent training. *See Netzel*, 51 Wis.2d at 6, 186 N.W.2d 258; *Cramer*, 45 Wis.2d at 150, 172 N.W.2d 427; Wis. Stat. § 907.02.

We conclude only that in order to survive summary judgment, Racine County was not required to name an expert witness. In so concluding, we do not close the door to the possibility that expert testimony may later assist the trier of fact in evaluating Racine County's breach of contract claim. Our point is only that in the posture of summary judgment, Racine County was not required to name an expert witness as a matter of law.

323 Wis.2d at 701-04, 781 N.W.2d at 97-98 (emphasis added). See Audette v. Cummings, 165

N.H. 763 (N.H. 2013)(holding that the plaintiffs were not required to present expert testimony in

order to prevail on the issue of causation in a breach of contract suit because the subject matter was "not beyond the ken of the average layperson").

      **b.**    <u>**Expert Testimony in Breach of the Implied Warranty of Merchantability Cases.**</u>

New Mexico recognizes that the implied warranty of merchantability is implied by law and is independent of express warranties.  <u>See</u> <u>International Paper Co. v. Farrar</u>, 1985-NMSC-046, ¶ 13, 700 P.2d 646.  N.M. Stat. Ann. 1978, § 55-2-314 defines the standard for determining whether a product is merchantable: "(2) Goods to be merchantable must be at least such as: (b) pass without objection in the trade under the contract description and . . . (d) are fit for the ordinary purposes for which such goods are used . . . ."  <u>Lieb v. Milne</u>, 1980-NMCA-125, ¶ 11, 625 P.2d 1233, 1236 (quoting N.M. Stat. Ann. 1978, § 55-2-314).  Comment 13 to § 55-2-314 also states, however: "In an action based on breach of warranty, it is of course necessary to show not only the existence of the warranty but the fact that the warranty was broken and <u>that the breach of the warranty was the proximate cause of the loss sustained</u>."  N.M. Stat. Ann. 1978, § 55-2-314 cmt. 13 (emphasis added).  <u>See</u> <u>Jesko v. Stauffer Chemical Co.</u>, 1976-NMCA-117, 558 P.2d 55 (holding that under New Mexico law, in a suit asserting breach of express and implied warranties, and breach of contract, the plaintiff set forth sufficient evidence to support the finding that the chemical Eradicane caused damage to corn crops); <u>Andrews v. Dial Corp.</u>, 2015 WL 6550055, at *5 (W.D. Tex. Oct. 28, 2015)(Sparks, J.)(explaining that under Texas law "[a] plaintiff who brings a products liability suit under an implied warranty of merchantability theory is required to prove proximate causation. . . ."); <u>Truck Ins. Exchange v. Magnetek, Inc.</u>, 360 F.3d 1206, 1214 (10th Cir. 2004)(explaining that under Colorado law, a plaintiff must prove causation for a breach of the implied warranty of merchantability claim).  In other words, to maintain a

breach of the implied warranty of merchantability claim under New Mexico law, a plaintiff must prove that the breach of the warranty proximately caused the plaintiff's damages. See Camino Real Mobile Home Park Partnership v. Wolfe, 1995-NMSC-013, ¶ 18, 891 P.2d at 1196 ("The party relying on the breach of warranty must prove the existence of a warranty, the breach thereof, causation, and damages."), overruled on other grounds by Sunnyland Farms, Inc. v. Central N.M. Elec. Co-op., Inc., 2013-NMSC-017, 301 P.3d 387.

The Court has found no New Mexico case directly addressing whether a plaintiff must produce expert testimony on the issue of causation or proximate causation for a breach-of-the-implied-warranty-of merchantability claim. In Driskill v. Ford Motor Co., 269 S.W.3d 199 (Tex. Ct. App. 2008), however, the Court of Appeals Sixth Appellate District of Texas affirmed a trial court's decision to grant summary judgment in the defendants' favor on a breach-of-the-implied-warranty-of merchantability claim where the plaintiff failed to produce expert testimony on causation. See 269 S.W.3d 199 (Tex. Ct. App. 2008). There, the plaintiffs filed a products liability suit after their car caught fire while turned off and parked in a garage, causing serious damage. See 269 S.W.3d at 202. The plaintiffs asserted that a defect in the speed control deactivation switch caused the fire and that the switch "melted beyond recognition" during the fire, and sought to prove their case through circumstantial evidence. 269 S.W.3d at 202, 205. The trial court excluded the fire investigator's testimony that the plaintiffs produced "as to the cause of the fire," but permitted the investigator to testify concerning the fire's "place of origin." 269 S.W.3d at 205. The investigator testified that the fire originated in the engine compartment's back left part, where the speed control switch was located. See 269 S.W.3d at

205.  The Court of Appeals Sixth Appellate District of Texas analyzed whether the plaintiffs had

produced sufficient evidence of proximate causation, explaining:

> There is no expert testimony bridging the analytical gap between the origin of a
> fire in the left rear area of an engine compartment and the conclusion that the
> [speed control deactivation switch] in that area was the cause-in-fact of the fire.
> While the evidence creates a strong suspicion that the defect caused the fire, the
> suspicion is just that, a suspicion. . . .  Whether the [speed control deactivation
> switch] caused the fire involves complex questions of chemistry, electrical
> engineering, and hydraulic engineering.   The issue is beyond the general
> experience and common understanding of a layperson.  Expert testimony was
> required to establish the [speed control deactivation switch] was the cause-in-fact
> of the fire.

269 S.W.3d at 205.

Similarly, Andrews v. Dial Corp. dealt with an implied warranty of merchantability claim

where the plaintiffs alleged that a defective Renuzit plug-in air freshener, a product that Dial

Corp. manufactured, caused a fire at a duplex property.  See 2015 WL 6550055, at *1.  The

defendants moved for summary judgment on the breach-of-implied-warranty-claim, because, for

among other reasons, the plaintiffs had not produced any evidence of causation.  See 2015 WL

6550055, at *4.  The Honorable Sam Sparks, United States District Judge for the United States

District Court for the Western District of Texas, concluded that Dial was entitled to summary

judgment, "because Plaintiffs have adduced no expert testimony on the issue of causation."  2015

WL 6550055, at *4.  Judge Sparks explained that a plaintiff who brings a products liability case

under an implied-warranty-of merchantability-theory must prove proximate causation.  See 2015

WL 6550055, at *5.  According to Judge Sparks, "[w]hether expert testimony is required

depends on whether the issue involves matters beyond 'the general experience and common

understanding of laypersons.'"  2015 WL 6550055, at *5.  Judge Sparks explained that, even if

the plaintiffs were able to prove defect through circumstantial evidence, Dial Corp. was entitled

to summary judgment, because the plaintiffs had no expert testimony establishing causation.  See 2015 WL 6550055, at *5.

Judge Sparks then explained that, as in Driskill v. Ford Motor Co. "whether some defect caused the Renuzit air freshener to fail and ignite involves scientific questions, including questions of chemistry, physics, and electrical engineering, outside the common understanding of a layperson."  2015 WL 6550055, at *6.  It then concluded:

> While Plaintiff offered the purportedly expert testimony of Hembree and Nichols on the causation question, as the Court ruled during hearing, their opinions that a malfunction in the Renuzit air freshener caused the fire are speculative.  While both Hembree and Nichols are clearly qualified to opine concerning the area and point of origin of a fire, that does not mean they are qualified to opine concerning whether *a defect in a particular product* caused a fire.  In fact, both Hembree and Nichols testified they are not qualified to render an opinion that the air freshener malfunctioned and that any such malfunction caused the fire, as neither are engineers with a working understanding of the air freshener.  *See* Hembree Dep. at 18:9–23; Nichols Dep. at 25:25–26:21.  Hembree's report reflects the speculative nature of any causation opinion he attempted to render: Hembree theorized that ignition could have resulted from the Renuzit air freshener being too close to the couch or too close to the box of Christmas ornaments in front of the outlet, rather than from failure of the device itself.  *See* Hembree Rep. at 19.

> In sum, Plaintiffs have no expert testimony bridging the analytical gap between the origin of the fire at the electrical outlet by the sofa in Rosales's living room and the conclusion a defect in the Renuzit air freshener was the cause-in-fact of the fire.  The record is silent concerning whether the Renuzit air freshener is even capable of causing a fire, or under what circumstances it might or might not ignite. Resolution of these questions by Hembree, Nichols, or other laypersons would be purely speculative.  Although Plaintiffs' evidence may create "a strong suspicion" that a defect in the air freshener caused the fire, suspicion is insufficient to demonstrate causation.  *Driskill*, 269 S.W.3d at 205.  As Plaintiffs were required to present competent expert testimony on the causation question and failed to do so, Dial is entitled to summary judgment.

2015 WL 6550055, at *6 (emphasis in original).

That New Mexico law requires expert testimony on proximate causation in breach-of-the-implied-warranty-of-merchantability claims is not foreclosed by the Supreme Court of New

Mexico's decision in Salazar v. D.W.B.H., Inc., 2008-NMSC-054, 192 P.3d 1205.  There, the

Supreme Court of New Mexico addressed whether expert evidence is required for proof of a

*defect* in a breach-of-the-implied-warranty-of-merchantability claim.  See 2008-NMSC-054, ¶¶

20-13, 192 P.3d at 1211.  In that case, the plaintiff had her engine replaced with a used engine,

which continued to smoke, lose oil rapidly, and ultimately needed to be replaced.  See 2008-

NMSC-054, ¶¶ 2-4, 192 P.3d at 1207.  The jury found for the plaintiff on her breach-of-the-

implied-warranty-of-merchantability  claim,  and  the  defendant  appealed  the  trial  court's

judgment, contending that substantial evidence did not support the judgment.  See 2008-NMSC-

054, ¶¶ 5-7, 192 P.3d at 1207.  The Supreme Court of New Mexico held that, to establish a

breach of the implied warranty of merchantability, "a buyer is not required to prove a *specific*

defect in the goods."  2008-NMSC-054, ¶ 21, 192 P.3d at 1211 (emphasis in original).  Rather,

according to the Supreme Court of New Mexico, "a buyer can use circumstantial evidence to

show that the goods were not fit for the ordinary purpose which they were intended."  2008-

NMSC-054, ¶ 21, 192 P.3d at 1211.  The Supreme Court of New Mexico further explained:

> New Mexico case law has implicitly recognized these principles.  For example, in
> *Arnold v. Ford Motor Co.*, we held that there was substantial evidence to support
> the trial court's determination that an expressly warranted vehicle was defective
> despite the trial court's failure to make a specific finding of a defect and despite
> the fact that expert testimony was not presented at trial.  90 N.M. 549, 550-51,
> 566 P.2d 98, 99-100 (1977).  We found it sufficient that the trial court based its
> finding of a defect on evidence that the vehicle's engine would cease to operate
> during normal driving functions, would overheat when the air conditioner was in
> use, and would exhaust black smoke.  *Id.*
>
> In light of these principles, Salazar was not required to prove the existence of a
> specific defect in the used engine.  Rather, it was incumbent on Salazar to show
> only that the used engine was not fit for its ordinary purpose.  While this may be
> proven with evidence of a specific defect, it can also be proven by circumstantial
> evidence.  In this case, the trial court found the circumstantial evidence sufficient

to find a breach of the implied warranty of merchantability, and the record supports such a finding.

Salazar v. D.W.B.H., Inc., 2008-NMSC-054, ¶¶ 22-23, 192 P.3d at 1211-12.

The Supreme Court of New Mexico's decision in Salazar v. D.W.B.H., Inc., is not inconsistent with Judge Sparks' decision in Andrews v. Dial Corp., where Judge Sparks held that a plaintiff who brings a products liability case under an implied warranty of merchantability theory must prove proximate causation, through expert testimony if "the issue involves matters beyond 'the general experience and common understanding of laypersons.'" See 2015 WL 6550055, at *5. There, Judge Sparks explained that, even if the plaintiffs were able to prove through circumstantial evidence that a defect existed, Dial Corp. was entitled to summary judgment, because the plaintiffs had no expert testimony on proximate causation. See 2015 WL 6550055, at *5. In other words, while a plaintiff can prove a defect through circumstantial evidence, expert testimony is required on the issue of proximate causation where matters beyond "the general experience and common understanding of laypersons" are involved. 2015 WL 6550055, at *5. As stated above, comment 13 to § 55-2-314 -- which codifies breach-of-the-implied-warranty-of-merchantability claims under New Mexico law -- states: "In an action based on breach of warranty, it is of course necessary to show not only the existence of the warranty but the fact that the warranty was broken and that the breach of the warranty was the proximate cause of the loss sustained." N.M. Stat. Ann. 1978, § 55-2-314 cmt. 13. In other words, "[a] plaintiff who brings a products liability suit under an implied warranty of merchantability theory is required to prove proximate causation," which is a separate issue from proof of a defect. Andrews v. Dial Corp., 2015 WL 6550055, at *5. See Pacific Indem. Co. v. Therm-O-Disc, Inc., 476 F. Supp. 2d 1216, 1225 (D.N.M. 2006)(Hansen, J.)("This claim requires proof of a defect.").

That New Mexico law requires expert testimony on proximate causation in breach-of-the-implied-warranty-of-merchantability claims finds further support in the Honorable C. LeRoy Hansen, United States District Judge, for the United States District Court for the District of New Mexico's decision in Pacific Indem. Co. v. Therm-O-Disc, Inc., 476 F. Supp. 2d 1216.  There, the defendant argued that it was entitled to summary judgment on all claims, including a breach of the implied warranty of merchantability, because the plaintiff could "not show a defect or proximate cause."  476 F. Supp. 2d at 1225 (emphasis added).  Judge Hansen concluded that the plaintiff survived summary judgment on the implied-warranty-of-merchantability claim, because the plaintiff "had provided sufficient expert testimony that the heater had a design defect that caused the fire at Ms. Hamilton's residence."  476 F. Supp. 2d at 1228.  Judge Hansen's use of the phrase "provided sufficient expert testimony" may suggest that, to survive summary judgment on proximate causation on an implied-warranty-of-merchantability claim, a plaintiff must provide at least some expert testimony, assuming that proximate causation cannot be determined by resort to common knowledge that an average person ordinarily possesses.  See Sullivan v. Lowes Home Centers, Inc., No. 03-2903, at *2-4 (N.D. Ala. 2007)(Blackburn, J.)(concluding that the plaintiff need not submit expert testimony as to the reason a tire exploded in an implied-warranty-of-merchantability claim where there was a short time between the plaintiff's purchase of a wheelbarrow and his injury, and the plaintiff testified that he did nothing wrong in inflating the tire).  In light of this precedent, the most faithful interpretation of New Mexico law suggests that a plaintiff must generally offer expert testimony on proximate causation in implied-warranty-of-merchantability claims unless it can be determined by resort to common knowledge that an average person ordinarily possesses.

      c.      **Expert Testimony in Breach of the Implied Warranty of Fitness for a Particular Purpose Cases.**

N.M. Stat. Ann. 1978 § 55-2-315 establishes:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

N.M. Stat. Ann. 1978 § 55-2-315.  The Court of Appeals of New Mexico has stated that, under the implied warranty of fitness for a particular purpose, a plaintiff must prove: (i) that at the time of contracting the seller had reason to know the buyer's particular purpose for which the item was being ordered; (ii) that the buyer relied on the seller's skill or judgment; and (iii) that the item was not fit for that purpose.  See Lieb v. Milne, 1980-NMCA-125, ¶ 11, 625 P.2d at 1237.  Unlike with breach of contract and breach of the implied warranty of merchantability, the Court can find no case holding that proof of causation or proximate causation is a prima facie element of a breach-of-the-implied-warranty-of-fitness-for-a-particular purpose claim.  The New Mexico jury instructions also do not list causation or proximate causation as an element for a breach-of-the-implied-warranty-of-fitness-for-a-particular purpose claim.  See N.M.R.A. 2015, UJI 13-1431, 13-1432.  Regarding the creation of the implied warranty of fitness for a particular purpose, the New Mexico jury instructions state:

> If the seller has reason to know at the time the contract is made that the [goods] [products] are purchased for any particular purpose and that the buyer is relying on the seller's skill or judgment to select or furnish suitable [goods] [products], there is an implied warranty that the [goods] [products] are fit for the purpose [unless the warranty is excluded].  The warranty is implied by law in the seller's and buyer's contract and may exist independent of anything said by the seller.

N.M.R.A. 2015, UJI 13-1431.  Further, with respect to breach of the warranty of fitness for a particular purpose, UJI-1432 states: "A supplier breaches the implied warranty of fitness for a particular purpose if the [goods] [products], though not defective, are unsuitable for the particular purpose for which they were purchased."  N.M.R.A. 2015, UJI-1432.  The Court has also not found any cases holding that a plaintiff must produce expert testimony on causation or proximate causation in a breach-of-the-implied-warranty-of-fitness-for-a-particular-purpose claim to survive summary judgment.  The Court therefore concludes that the breach of the implied warranty of fitness for a particular purpose context, the line of New Mexico cases holding that expert testimony is required on causation where it is beyond the general knowledge that an average person would ordinarily possess is inapplicable.

## ANALYSIS

The Court will grant the MSJ on American Mechanical's breach-of-contract and breach-of-the-implied-warranty-of-merchantability claims.  The Court will deny the MSJ, however, on American Mechanical's breach-of-the-implied-warranty-of-fitness-for-a-particular-purpose claim.  Under New Mexico law, causation is a prima facie element for breach-of-contract claims and proximate causation is a prima facie element for breach-of-the-implied-warranty-of-merchantability claims, and the Court concludes that, in this case, the cause of the exploding or leaking hoses at the Southwest Cheese Factory cannot be determined by resort to common knowledge which an average person ordinarily possesses.  Northland Piping is therefore entitled to summary judgment on American Mechanical's breach-of-contract and breach-of-the-implied-warranty-of-merchantability claims, because American Mechanical has not submitted expert testimony on them.  Because the Court concludes that neither causation nor proximate causation

is a prima facie element for a breach of the implied-warranty-of-fitness-for-a-particular-purpose claim under New Mexico law, however, it denies the MSJ as to that claim.

American Mechanical brings this action under theories of breach of contract, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness for a particular purpose. The standards governing the consideration of a motion for summary judgment are well established. Under rule 56, summary judgment is proper only when the pleadings, affidavits, depositions or admissions establish that there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party. See Celotex Corp. v. Catrett, 477 U.S. at 317.

> Before the court can rule on a party's motion for summary judgment, the moving party must satisfy its burden of production in one of two ways: by putting evidence into the record that affirmatively disproves an element of the nonmoving party's case, or by directing the court's attention to the fact that the non-moving party lacks evidence on an element of its claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323-25. On those issues for which it bears the burden of proof at trial, the nonmovant "must go beyond the pleadings and designate specific facts to make a showing sufficient to establish the existence of an element essential to his case in order to survive summary judgment." Cardoso v. Calbone, 490 F.3d 1194, 1197 (10th Cir. 2007).

Plustwik v. Voss of Norway ASA, 2013 WL 1945082, at *1 (emphasis added). Here, Northland Piping does not "put[] forth evidence into the record that affirmatively disproves an element of the nonmoving party's case." Plustwik v. Voss of Norway ASA, 2013 WL 1945082, at *1. Rather, it purports to "direct[] the court's attention to the fact that the non-moving party lacks evidence on an element of its claim, 'since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" Plustwik

- 66 -

v. Voss of Norway ASA, 2013 WL 1945082, at *1 (quoting Celotex Corp. v. Catrett, 477 U.S. at 323-25).  Specifically, Northland Piping "directs the court's attention to the fact that," Plustwik v. Voss of Norway ASA, 2013 WL 1945082, at *1, American Mechanical lacks evidence -- specifically, expert testimony -- on the element of causation and/or proximate causation, see MSJ at 3-5.  To determine whether American Mechanical survives summary judgment, the Court must examine the prima facie elements of each asserted cause of action under New Mexico law: (i) breach of contract; (ii) breach of the implied warranty of merchantability; and (iii) breach of the implied warranty of fitness for a particular purpose.

## I.   THE COURT WILL GRANT SUMMARY JUDGMENT ON AMERICAN MECHANICAL'S BREACH-OF-CONTRACT CLAIM.

The Court concludes that Northland Piping is entitled to summary judgment on American Mechanical's breach-of-contract claim, for two reasons.  First, Northland Piping is entitled to summary judgment on this claim, because causation in this case is technical and cannot be evaluated by resort to common knowledge, and American Mechanical has not provided expert testimony.  Second, even if expert testimony were not required, American Mechanical has not otherwise resisted summary judgment by attaching to its Response circumstantial evidence of causation.

American Mechanical alleges that Northland Piping entered into a contract with American Mechanical to supply "specific hoses and fittings of a certain grade and quality for the installation at Southwest Cheese Company."  Complaint ¶ 28, at 4.  American Mechanical contends that "the hoses and crimped fittings delivered were not of a suitable kind[,]" that this constituted a breach of their agreement, and that it suffered damages as a result of the breach.  Complaint ¶¶ 17-21, 22-27, at 3-4.  A contract is a legally enforceable promise that must consist

of an offer, an acceptance, consideration, and mutual assent.  See N.M.R.A., Civ. UJI 13-801.

Under New Mexico law, "[t]he elements of a breach-of-contract action are the existence of the

contract, breach of the contract, causation, and damages."  Abreu v. N.M. Children, Youth and

Families Dep't, 797 F. Supp. 2d at 1247 (citing Camino Real Mobile Home Park P'Ship v.

Wolfe, 891 P.2d at 1196, overruled on other grounds by Sunnyland Farms, Inc. v. Central N.M.

Elec. Co-op., Inc., 2013-NMSC-017, 301 P.3d 387)).

Northland Piping has directed the Court's attention to the fact that American Mechanical

lacks expert testimony on causation, which is an element essential to its claim for breach of

contract.  See Plustwik v. Voss of Norway ASA, 2013 WL 1945082, at *1 (quoting Celotex

Corp. v. Catrett, 477 U.S. at 323-25).  American Mechanical admits that it has not provided

expert testimony on causation.  See MSJ at 3 (setting forth this fact); Response at 4 (not

disputing this fact).  American Mechanical has no expert testimony that the Defendants caused

any of the alleged hose failures.  See MSJ at 3 (setting forth this fact); Response at 4 (not

disputing this fact).  The question is whether, under New Mexico law, a plaintiff must provide

expert testimony on the prima facie element of causation for a breach-of-contract claim to

survive summary judgment.  The Court can find no sound reason why the Supreme Court of

New Mexico would not extend its rule announced in Cervantes v. Forbis and it progeny in the

products liability, accident, negligent installation, and stray voltage cases, to the breach-of-

contract context.  See Adobe Masters, Inc. v. Downey, 1994-NMSC-101, ¶ 9, 883 P.2d at 135

(holding that in professional negligence cases based on breach of the implied warranty to use

reasonable skill under contract law, a finding of malpractice must be proved by expert testimony

unless the case is one where exceptional circumstances within the common experience or

knowledge of a layman are present).  The Supreme Court of Wisconsin made this leap in Racine County v. Oracular Milwaukee, Inc., where the court concluded, in a breach of contract lawsuit that, under the facts of the case, the plaintiff was not required to submit expert testimony in order to survive summary judgment because the breach-of-contract claim concerned "matters of common knowledge . . . within the realm of ordinary experience.  The Court therefore concludes that, where the issue of causation is presented in a breach-of-contract context in which it cannot be evaluated by resort to common knowledge that an average person ordinarily possesses, a plaintiff must provide expert testimony to survive summary judgment.  See Mascarenas v. Gonzales, 1972-NMCA-062, ¶ 6, 497 P.2d at 751.

The Court must therefore determine whether this case is one in which the issue of causation is sufficiently technical such that it cannot be evaluated by resort to common knowledge that an average person ordinarily possesses, requiring expert testimony.  Northland Piping suggests that the Court look to the Complaint's allegations to make this determination.  In its Complaint, American Mechanical alleges that it "is a specialty contractor working in the food and biodiesel industries providing installation and repair of food grade process piping with an emphasis in stainless steel welding."  Complaint ¶ 6, at 2.  It states that, on or around October 7, 2012, Southwest Cheese issued American Mechanical "a purchase order to install (weld) hoses on eight (8) clarifiers.  Each clarifier takes four (4) hoses for a total of thirty-two (32) hoses."  Complaint ¶ 8, at 2.  According to American Mechanical, "[t]he hoses and hose fittings that are at the core of this dispute were purchased from the defendant Unisource Manufacturing through defendant Northland Process Piping."  Complaint ¶ 11, at 2.  The Complaint further states that Unisource Manufacturing supplied "the hoses, fittings, dies and crimping equipment" to

Northland Process Piping.  Complaint ¶ 12, at 2.  Unisource Manufacturing also "supplied the technical training and support to NPP for the proper installation of the fittings onto the hoses." Complaint ¶ 13, at 3.  American Mechanical alleges that "[t]he hoses with the attached crimped fittings were not off the shelf materials, but needed to be made to the custom length specifications ordered by AMS."  Complaint ¶ 14, at 3.  When American Mechanical bought the materials, it notified Unisource Manufacturing of the use and custom specifications that would be required.  Complaint ¶ 15, at 3.  "The manufacturer stated to AMS that they understood the specified use, and that there would be no problem."  Complaint ¶ 16, at 3.  "Immediately after extensive installation, the hoses began to fail."  Complaint ¶ 17, at 3.

Based on these allegations, the Court concludes that the issue of causation here is technical and cannot be evaluated by resort to common knowledge that an average person ordinarily possesses.  Expert testimony is therefore required.  This case is not one involving, for example, a hose bought from Wal-Mart that exploded immediately upon being attached to the water supply.  Rather, American Mechanical, a specialty contractor, ordered custom commercial-grade hoses from Unisource Manufacturing.  See Complaint ¶¶ 14-15, at 3.  Unisource Manufacturing supplied "the hoses, fittings, dies and crimping equipment" to Northland Piping. Unisource Manufacturing provided "the technical training and support to NPP for the proper installation of the fittings onto the hoses."  Complaint ¶ 13, at 3.  In other words, the Complaint's allegations indicate that this case is not one of simply connecting hoses into the water supply. Further, in its Complaint, American Mechanical does not allege that there were blatant holes in the commercial hoses or that they were obviously defective.  American Mechanical states only that, "[i]mmediately after extensive installation, the hoses began to fail."  Complaint ¶ 17, at 3.

In the MSJ, Northland Piping has pointed out that American Mechanical has not produced expert testimony on why "the hoses began to fail."   Complaint ¶ 17, at 3.   Based on the Complaint's allegations, the Court concludes that the question of causation in this case is technical, requiring expert testimony.   Further, American Mechanical does not undermine this conclusion by offering any evidence to the contrary in its Response -- such as pictures or affidavits -- indicating that causation in this case is non-technical and can be evaluated with resort to common knowledge that an average person ordinarily possesses.   The Court therefore will grant the MSJ for Northland Piping on American Mechanical's breach-of-contract claim.

The Court also grants the MSJ American Mechanical's breach-of-contract claim for a second reason.   Even if the Court were to conclude that expert testimony is not necessary under these circumstances, American Mechanical would still need to produce circumstantial evidence on causation to survive summary judgment.   Having satisfied its burden as the moving party under Celotex Corp. v. Catrett, 477 U.S. at 323-25, the burden shifted to American Mechanical to "go beyond the pleadings and designate specific facts to make a showing sufficient to establish the existence of" causation, which is "an element essential to his case in order to survive summary judgment."   Cardoso v. Calbone, 490 F.3d at 1197.   American Mechanical cannot rest upon "mere allegations or denials, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by" rule 56.   Land v. Burlington Northern R. Co., 1990 WL 163310, at *1 (D. Kan. Oct. 22, 1990)(Theis, J.).

Here, American Mechanical's Response does not go beyond the pleadings to make a showing sufficient to establish the existence of the element of causation, which is essential to its breach-of-contract claim.   See Abreu v. N.M. Children, Youth and Families Dep't, 797 F. Supp.

2d at 1247 (under New Mexico law, "[t]he elements of a breach-of-contract action are the existence of a contract, breach of the contract, causation, and damages").  American Mechanical refers in its Response -- not in its Complaint or in any attached evidence -- to "admissions of direct fault by the defendants" and states that there is "the admission of fault by the defendants that was made available in discovery in emails, pictures, and voicemails."  Response at 5-6. American Mechanical contends in its briefing that this evidence "would enable a jury to return a verdict for the plaintiff" and that the issue of causation "is already made moot by the direct admissions of the defendant as to causation -- the defendants have expressly admitted that the hoses and fittings were undercrimped and defective at the time of sale to the plaintiff."  Response at 6.   American Mechanical also states in its briefing that it has "been provided in discovery with all of the admissions of the defendants regarding the defective hoses and fittings themselves for examination by their experts before they could even be examined by possible experts of AMS."  Response at 8.  Under the principles set forth in Celotex Corp. v. Catrett, 477 U.S. at 323-25, however, American Mechanical's Response is insufficient.  American Mechanical does not attach to its response affidavits, depositions, or other evidence that might show a fact issue on causation.  See Response at 1-11.  Instead, American Mechanical relies on mere "allegations or denials," and does not set forth specific facts showing a genuine issue for trial.  Land v. Burlington Northern R. Co., 1990 WL 163310, at *1.  If the Court did not conclude that expert testimony is required because of the technical nature of causation in this case, American Mechanical might have survived summary judgment on its breach-of-contract claim by attaching the alleged "emails, pictures, and voicemails" that show "admission of fault by the defendants," or by including affidavits or other evidence.  See Response at 5-6.  The Court cannot, however,

take American Mechanical's word that "[t]he evidence has been provided that would enable a

jury to return a verdict for the plaintiff." Response at 6. Rather, at the summary-judgment stage,

American Mechanical must produce evidence so that the Court can make that determination.

## II.   THE COURT WILL GRANT SUMMARY JUDGMENT ON AMERICAN MECHANICAL'S                    BREACH-OF-THE-IMPLIED-WARRANTY-OF-MERCHANTABILITY CLAIM.

American Mechanical also contends that Northland Piping breached the implied warranty

of merchantability. See Complaint ¶¶ 28-31, at 4. American Mechanical alleges:

> 29. The hoses and fittings sold by the defendants to the plaintiff would not pass without objection in the trade under the contract description.

> 30. The hoses and fittings sold by the defendants to the plaintiff are defective and are not fit for the ordinary purposes for which such hoses and fittings are used.

> 31. The hoses and fitting do not conform to the promises or statements made by the defendants to the plaintiff.

Complaint ¶¶ 29-31, at 10. New Mexico recognizes that the implied warranty of merchantability

is implied by law and is independent of express warranties. See International Paper Co. v.

Farrar, 1985-NMSC-046, ¶ 13, 700 P.2d 646. N.M. Stat. Ann. 1978, § 55-2-314 defines the

standard for determining whether a product is merchantable: "(2) Goods to be merchantable must

be at least such as: (b) pass without objection in the trade under the contract description and . . .

(d) are fit for the ordinary purposes for which such goods are used . . . ." Lieb v. Milne, 1980-

NMCA-125, ¶ 11, 625 P.2d 1233, 1236 (quoting N.M. Stat. Ann. 1978, § 55-2-314). Comment

13 to § 55-2-314 also states, however: "In an action based on breach of warranty, it is of course

necessary to show not only the existence of the warranty but the fact that the warranty was

broken and that the breach of the warranty was the proximate cause of the loss sustained." N.M.

Stat. Ann. 1978, § 55-2-314 cmt. 13 (emphasis added). See Jesko v. Stauffer Chemical Co.,

1976-NMCA-117, 558 P.2d 55 (holding that under New Mexico law, in a suit asserting breach of express and implied warranties, and breach of contract, the plaintiff set forth sufficient evidence to support the finding that the chemical Eradicane caused damage to corn crops); Andrews v. Dial Corp., 2015 WL 6550055, at *5 (W.D. Tex. Oct. 28, 2015)(Sparks, J.)(explaining that under Texas law "[a] plaintiff who brings a products liability suit under an implied warranty of merchantability theory is required to prove proximate causation. . . ."); Truck Ins. Exchange v. Magnetek, Inc., 360 F.3d 1206, 1214 (10th Cir. 2004)(explaining that under Colorado law, a plaintiff must prove causation for a breach of the implied warranty of merchantability claim).  In other words, to maintain a breach of the implied warranty of merchantability claim under New Mexico law, a plaintiff must prove that the breach of the warranty proximately caused the plaintiff's damages.  See Camino Real Mobile Home Park Partnership v. Wolfe, 1995-NMSC-013, ¶ 18, 891 P.2d at 1196 ("The party relying on the breach of warranty must prove the existence of a warranty, the breach thereof, causation, and damages."), overruled on other grounds by Sunnyland Farms, Inc. v. Central N.M. Elec. Co-op., Inc., 2013-NMSC-017, 301 P.3d 387.

Northland Piping has therefore directed the Court's attention to the fact that American Mechanical lacks expert testimony on proximate causation, which is an essential element of its claim for breach of the implied warranty of merchantability.  See Plustwik v. Voss of Norway ASA, 2013 WL 1945082, at *1 (quoting Celotex Corp. v. Catrett, 477 U.S. at 323-25).  American Mechanical admits that it has not provided expert testimony on causation.  See MSJ at 3 (setting forth this fact); Response at 4 (not disputing this fact).  The question is whether, under New Mexico law, a plaintiff must provide expert testimony on the element of proximate

causation for a breach-of-the-implied-warranty-of-merchantability claim to survive summary judgment. The Court concludes that, where the issue of causation or proximate causation is presented in a breach-of-the-implied-warranty-of-merchantability claim in which it cannot be evaluated by resort to common knowledge that an average person ordinarily possesses, a plaintiff must provide expert testimony to survive summary judgment. See Mascarenas v. Gonzales, 1972-NMCA-062, ¶ 6, 497 P.2d at 751. Because proximate causation in this context cannot be evaluated by resort to common knowledge that an average person ordinarily possesses, Northland Piping is entitled to summary judgment on American Mechanical's breach-of-the-implied-warranty-of-merchantability claim.

> **A.    NORTHLAND PIPING IS ENTITLED TO SUMMARY JUDGMENT ON THE                            BREACH-OF-THE-IMPLIED-WARRANTY-OF-MERCHANTABILITY CLAIM BECAUSE AMERICAN MECHANICAL HAS NOT PRODUCED EXPERT TESTIMONY ON PROXIMATE CAUSATION.**

Whether expert testimony is required depends on whether the issue involves matters beyond laypersons' general experience and common understanding. See Curtis v. General Motors Corp., 649 F.2d 808, 813 (10th Cir. 1981). While the Court can find no case from New Mexico directly addressing whether proof of proximate causation in breach-of-the-implied warranty-of-merchantability claims requires expert testimony, the Court of Appeals Sixth Appellate District of Texas affirmed a trial court's decision to grant summary judgment in the defendants' favor under similar circumstances. See Driskill v. Ford Motor Co., 269 S.W.3d at 199. There, the plaintiffs filed a products liability suit after their car caught fire while turned off and parked in a garage, causing serious damage. See 269 S.W.3d at 202. The plaintiffs asserted that a defect in the speed control deactivation switch caused the fire and that the switch "melted

beyond recognition" during the fire, and sought to prove their case through circumstantial evidence.  269 S.W.3d at 202, 205.  The trial court excluded the fire investigator's testimony that the plaintiffs produced "as to the cause of the fire," but permitted the investigator to testify concerning the fire's "place of origin."  269 S.W.3d at 205.  The investigator testified that the fire originated in the engine compartment's back left part, where the speed control switch was located.  See 269 S.W.3d at 205.  The Court of Appeals Sixth Appellate District of Texas analyzed whether the plaintiffs had produced sufficient evidence of proximate causation, explaining:

> There is no expert testimony bridging the analytical gap between the origin of a fire in the left rear area of an engine compartment and the conclusion that the [speed control deactivation switch] in that area was the cause-in-fact of the fire. While the evidence creates a strong suspicion that the defect caused the fire, the suspicion is just that, a suspicion. . . .  Whether the [speed control deactivation switch] caused the fire involves complex questions of chemistry, electrical engineering, and hydraulic engineering.  The issue is beyond the general experience and common understanding of a layperson.  Expert testimony was required to establish the [speed control deactivation switch] was the cause-in-fact of the fire.

269 S.W.3d at 205.

Similarly, Andrews v. Dial Corp. dealt with an implied warranty of merchantability claim where the plaintiffs alleged that a defective Renuzit plug-in air freshener, a product that Dial Corp. manufactured caused a fire at a duplex property.  See 2015 WL 6550055, at *1.  The defendants moved for summary judgment on the breach-of-implied-warranty claim because, for among other reasons, the plaintiffs had not produced any evidence of causation.  See 2015 WL 6550055, at *4.  Judge Sparks concluded that Dial Corp. was entitled to summary judgment, "because Plaintiffs have adduced no expert testimony on the issue of causation."  2015 WL 6550055, at *4.    Judge Sparks explained that a plaintiff who brings a products liability case

under an implied-warranty-of-merchantability theory must prove proximate causation.  See 2015 WL 6550055, at *5.   According to Judge Sparks, "[w]hether expert testimony is required depends on whether the issue involves matters beyond 'the general experience and common understanding of laypersons.'"  2015 WL 6550055, at *5.  Judge Sparks explained that, even if the plaintiffs were able to prove defect through circumstantial evidence, Dial Corp. was entitled to summary judgment, because the plaintiffs had no expert testimony establishing causation.  See 2015 WL 6550055, at *5.

Judge Sparks then explained that, as in Driskill v. Ford Motor Co. "whether some defect caused the Renuzit air freshener to fail and ignite involves scientific questions, including questions of chemistry, physics, and electrical engineering, outside the common understanding of a layperson."  2015 WL 6550055, at *6.  He then concluded:

> While Plaintiff offered the purportedly expert testimony of Hembree and Nichols on the causation question, as the Court ruled during hearing, their opinions that a malfunction in the Renuzit air freshener caused the fire are speculative.  While both Hembree and Nichols are clearly qualified to opine concerning the area and point of origin of a fire, that does not mean they are qualified to opine concerning whether *a defect in a particular product* caused a fire.  In fact, both Hembree and Nichols testified they are not qualified to render an opinion that the air freshener malfunctioned and that any such malfunction caused the fire, as neither are engineers with a working understanding of the air freshener.  *See* Hembree Dep. at 18:9-23; Nichols Dep. at 25:25-26:21.   Hembree's report reflects the speculative nature of any causation opinion he attempted to render: Hembree theorized that ignition could have resulted from the Renuzit air freshener being too close to the couch or too close to the box of Christmas ornaments in front of the outlet, rather than from failure of the device itself.  *See* Hembree Rep. at 19.
>
> In sum, Plaintiffs have no expert testimony bridging the analytical gap between the origin of the fire at the electrical outlet by the sofa in Rosales's living room and the conclusion a defect in the Renuzit air freshener was the cause-in-fact of the fire.  The record is silent concerning whether the Renuzit air freshener is even capable of causing a fire, or under what circumstances it might or might not ignite. Resolution of these questions by Hembree, Nichols, or other laypersons would be purely speculative.  Although Plaintiffs' evidence may create "a strong

suspicion" that a defect in the air freshener caused the fire, suspicion is insufficient to demonstrate causation. *Driskill*, 269 S.W.3d at 205. As Plaintiffs were required to present competent expert testimony on the causation question and failed to do so, Dial is entitled to summary judgment.

Andrews v. Dial Corp., 2015 WL 6550055, at *6.

In Salazar v. D.W.B.H., Inc., 2008-NMSC-054, 192 P.3d 1205, however, the Supreme Court of New Mexico addressed the related issue whether expert evidence is required for proof of a defect in a breach-of-the-implied-warranty-of-merchantability claim. See 2008-NMSC-054, ¶¶ 20-13, 192 P.3d at 1211. There, the plaintiff had her engine replaced with a used engine, which continued to smoke, lose oil rapidly, and ultimately needed to be replaced. See 2008-NMSC-054, ¶¶ 2-4, 192 P.3d at 1207. The jury found for the plaintiff on her breach-of-the-implied-warranty-of-merchantability claim, and the defendant appealed the trial court's judgment, contending that substantial evidence did not support the judgment. See 2008-NMSC-054, ¶¶ 5-7, 192 P.3d at 1207. The Supreme Court of New Mexico held that, to establish a breach of the implied warranty, "a buyer is not required to prove a *specific* defect in the goods." 2008-NMSC-054, ¶ 21, 192 P.3d at 1211. Rather, according to the Supreme Court of New Mexico, "a buyer can use circumstantial evidence to show that the goods were not fit for the ordinary purpose which they were intended." 2008-NMSC-054, ¶ 21, 192 P.3d at 1211. The Supreme Court of New Mexico further explained:

> New Mexico case law has implicitly recognized these principles. For example, in *Arnold v. Ford Motor Co.*, we held that there was substantial evidence to support the trial court's determination that an expressly warranted vehicle was defective despite the trial court's failure to make a specific finding of a defect and despite the fact that expert testimony was not presented at trial. 90 N.M. 549, 550-51, 566 P.2d 98, 99-100 (1977). We found it sufficient that the trial court based its finding of a defect on evidence that the vehicle's engine would cease to operate during normal driving functions, would overheat when the air conditioner was in use, and would exhaust black smoke. *Id.*

- 78 -

> In light of these principles, Salazar was not required to prove the existence of a specific defect in the used engine. Rather, it was incumbent on Salazar to show only that the used engine was not fit for its ordinary purpose. While this may be proven with evidence of a specific defect, it can also be proven by circumstantial evidence. In this case, the trial court found the circumstantial evidence sufficient to find a breach of the implied warranty of merchantability, and the record supports such a finding.

Salazar v. D.W.B.H., Inc., 2008-NMSC-054, ¶¶ 22-23, 192 P.3d at 1211-12.

The Supreme Court of New Mexico's decision in Salazar v. D.W.B.H., Inc., however, is not inconsistent with Judge Sparks' decision in Andrews v. Dial Corp., which held that a plaintiff who brings a products liability case under an implied-warranty-of-merchantability theory must prove proximate causation, through expert testimony if "the issue involves matters beyond 'the general experience and common understanding of laypersons.'"  2015 WL 6550055, at *5 (quoting Driskill v. Ford Motor Co., 269 S.W.3d at 204).  There, Judge Sparks explained that, even if the plaintiffs were able to prove that a defect existed through circumstantial evidence, Dial Corp. was entitled to summary judgment, because the plaintiffs had no expert testimony on proximate causation.  See Andrews v. Dial Corp., 2015 WL 6550055, at *5.  In other words, while a plaintiff can prove a defect through circumstantial evidence, expert testimony is required on the issue of proximate causation where matters "beyond 'the general experience and common understanding of laypersons'" are involved.  2015 WL 6550055, at *5 (quoting Driskill v. Ford Motor Co., 269 S.W.3d at 204).  As stated above, comment 13 to § 55-2-314, which codifies implied-warranty-of-merchantability claims under New Mexico law, states: "In an action based on breach of warranty, it is of course necessary to show not only the existence of the warranty but the fact that the warranty was broken and that the breach of the warranty was the proximate cause of the loss sustained."  N.M. Stat. Ann. 1978, § 55-2-314 cmt. 13 (emphasis added).  In

other words, "[a] plaintiff who brings a products liability suit under an implied warranty of merchantability theory is required to prove proximate causation," which is a separate issue from proof of a defect.  Andrews v. Dial Corp., 2015 WL 6550055, at *5.  See Pacific Indem. Co. v. Therm-O-Disc, Inc., 476 F. Supp. 2d at 1225 ("This claim requires proof of a defect.").

That New Mexico law requires expert testimony on proximate causation in breach-of-the-implied-warranty-of-merchantability claims may find support in Judge Hansen's decision in Pacific Indem. Co. v. Therm-O-Disc, Inc..  There, the defendant argued that it was entitled to summary judgment on all claims, including a breach of the implied warranty of merchantability, because the plaintiff could "not show a defect or proximate cause."  476 F. Supp. 2d at 1225 (emphasis added).  Judge Hansen concluded that the plaintiff survived summary judgment on the implied-warranty-of-merchantability claim, because the plaintiff "had provided sufficient expert testimony that the heater had a design defect that caused the fire at Ms. Hamilton's residence." 476 F. Supp. 2d at 1228.  Judge Hansen's use of the phrase "provided sufficient expert testimony" may suggest that, to survive summary judgment on proximate causation on an implied-warranty-of-merchantability claim, a plaintiff must provide at least some expert testimony, assuming that proximate causation cannot be determined by resort to common knowledge that an average person ordinarily possesses.  See Sullivan v. Lowes Home Centers, Inc., No. 03-2903, at *2-4 (N.D. Ala. 2007)(Blackburn, J.)(concluding that the plaintiff need not submit expert testimony as to the reason a tire exploded in an implied-warranty-of-merchantability claim where there was a short time between the plaintiff's purchase of a wheelbarrow and his injury, and the plaintiff testified that he did nothing wrong in inflating the tire).

In light of this precedent, the Court concludes that the Supreme Court of New Mexico would conclude that a plaintiff must generally offer expert testimony on proximate causation in implied-warranty-of-merchantability claims, unless the issue involves matters within laypersons' general experience and common understanding.   Section I of this Memorandum Opinion's analysis section explained why causation in this case is technical and beyond the general knowledge that an average person ordinarily possesses.   The Court applies the same reasoning here and concludes that American Mechanical needs to submit expert testimony on proximate causation to survive summary judgment on its breach of the implied-warranty-of-merchantability claim.   In short, like in <u>Driskill v. Ford Motor Co.</u> whether some defect in the hoses and fittings proximately caused them to break apart and/or leak is a technical question, outside the general knowledge that an average person would ordinarily possess.   Because American Mechanical: (i) does not submit expert testimony on proximate causation; and (ii) does not produce evidence indicating that proximate causation in this case involves issues within laypersons' general experience and common understanding, the Court grants the MSJ on American Mechanical's breach-of-the-implied-warranty-of-merchantability claim.

> **B.      EVEN IF EXPERT TESTIMONY ON PROXIMATE CAUSATION IS NOT REQUIRED IN A BREACH-OF-THE-IMPLIED-WARRANTY-OF-MERCHANTABILITY CLAIM, NORTHLAND PIPING WOULD STILL BE ENTITLED TO SUMMARY JUDGMENT, BECAUSE AMERICAN MECHANICAL HAS NOT PRODUCEED ANY OTHER CIRCUMSTANTIAL EVIDENCE ON PROXIMATE CAUSATION.**

Even if the Court were to conclude that expert testimony on proximate causation were not required on American Mechanical's breach-of-the-implied-warranty-of-merchantability claim, Northland Piping would still be entitled to summary judgment, because American Mechanical does not produce even circumstantial evidence of proximate causation in its Response.   <u>See</u>

Response at 1-11.  Because Northland Piping has satisfied its burden as the moving party under

Celotex Corp. v. Catrett, 477 U.S. at 323-25, the burden shifts to American Mechanical to "go

beyond the pleadings and designate specific facts to make a showing sufficient to establish the

existence of" proximate causation, which is "an element essential to his case in order to survive

summary judgment."  Cardoso v. Calbone, 490 F.3d at 1197.  As stated above, comment 13 to §

55-2-314 establishes: "In an action based on breach of warranty, it is of course necessary to show

not only the existence of the warranty but the fact that the warranty was broken and that the

breach of the warranty was the proximate cause of the loss sustained."  N.M. Stat. Ann. 1978, §

55-2-314 cmt. 13 (emphasis added).  American Mechanical cannot rest upon "mere allegations

or denials, but must set forth specific facts showing a genuine issue for trial, relying upon the

types of evidentiary materials contemplated by" rule 56.  Land v. Burlington Northern R. Co.,

1990 WL 163310, at *1.  American Mechanical's Response does not have any circumstantial

evidence on proximate causation.  See Response at 1-11.  As state above, American Mechanical

refers to "admissions of direct fault by the defendants" and states that there is "the admission of

fault by the defendants that was made available in discovery in emails, pictures, and voicemails."

Response at 5-6.  American Mechanical contends that this evidence "would enable a jury to

return a verdict for the plaintiff" and that the issue of causation "is already made moot by the

direct admissions of the defendant as to causation -- the defendants have expressly admitted that

the hoses and fittings were undercrimped and defective at the time of sale to the plaintiff."

Response at 6.  American Mechanical also states that it has "been provided in discovery with all

of the admissions of the defendants regarding the defective hoses and fittings themselves for

examination by their experts before they could even be examined by possible experts of AMS."

Response at 8.  American Mechanical does not attach to its response affidavits, depositions, or other evidence that might show a fact issue on proximate causation.  See Response at 1-11. Instead, American Mechanical relies on mere "allegations or denials," and does not set forth specific facts showing a genuine issue for trial.  Land v. Burlington Northern R. Co., 1990 WL 163310, at *1.  The Court therefore grants the MSJ on American Mechanical's implied warranty of merchantability claim.

## III.    AMERICAN MECHANICAL SOLUTIONS SURVIVES SUMMARY JUDGMENT ON ITS BREACH-OF-THE-IMPLIED-WARRANTY-OF-FITNESS-FOR-A-PARTICULAR PURPOSE CLAIM.

American Mechanical also asserts a claim for breach of the implied warranty of fitness for a particular purpose.  See Complaint ¶¶ 32-36, at 4-5.  N.M. Stat. Ann. 1978 § 55-2-315 establishes:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

N.M. Stat. Ann. 1978 § 55-2-315.  The Court of Appeals of New Mexico has stated that, under the implied warranty of fitness for a particular purpose, a plaintiff must prove: (i) that at the time of contracting the seller had reason to know the buyer's particular purpose for which the item was being ordered; (ii) that the buyer relied on the seller's skill or judgment; and (iii) that the item was not fit for that purpose.  See Lieb v. Milne, 1980-NMCA-125, ¶ 11, 625 P.2d at 1237. Unlike with breach of contract and breach of the implied warranty of merchantability claims, the Court can find no case holding that proof of causation or proximate causation is an element of a breach of the implied warranty of fitness for a particular purpose claim.  See N.M.R.A. 2015, UJI

13-1431, 13-1432.   Regarding the creation of the implied warranty of fitness for a particular

purpose, the New Mexico jury instructions state:

> If the seller has reason to know at the time the contract is made that the [goods]
> [products] are purchased for any particular purpose and that the buyer is relying
> on the seller's skill or judgment to select or furnish suitable [goods] [products],
> there is an implied warranty that the [goods] [products] are fit for the purpose
> [unless the warranty is excluded].  The warranty is implied by law in the seller's
> and buyer's contract and may exist independent of anything said by the seller.

N.M.R.A. 2015, UJI 13-1431.  Further, with respect to breach of the warranty of fitness for a

particular purpose, UJI-1432 states: "A supplier breaches the implied warranty of fitness for a

particular purpose if the [goods] [products], though not defective, are unsuitable for the

particular purpose for which they were purchased."  N.M.R.A. 2015, UJI 13-1432.

The Court has also not found any cases holding that a plaintiff must produce expert

testimony on causation or proximate causation in a breach-of-the-implied-warranty-of-fitness-

for-a-particular-purpose claim to survive summary judgment.  Northland Piping therefore has not

directed the Court's attention to the fact that American Mechanical lacks evidence on an element

for its claim of breach of the implied warranty of fitness for a particular purpose.  See Plustwik v.

Voss of Norway ASA, 2013 WL 1945082, at *1 (quoting Celotex Corp. v. Catrett, 477 U.S. at

323-25).  Because Northland Piping did not satisfy its burden as the moving party under Celotex

Corp. v. Catrett, 477 U.S. at 323-25, the burden never shifts to American Mechanical to "go

beyond the pleadings and designate specific facts to make a showing sufficient to establish the

existence of" proximate causation.  Cardoso v. Calbone, 490 F.3d at 1197.  The Court therefore

concludes that the breach of the implied warranty of fitness for a particular purpose context, the

line of New Mexico cases holding that expert testimony is required on causation where it is

beyond the general knowledge that an average person would ordinarily possess is inapplicable.

Accordingly, the Court denies summary judgment on American Mechanical's breach-of-the-implied-warranty-of-fitness-for-a-particular-purpose claim.

**IT IS ORDERED** that the Defendants' Motion for Summary Judgment and Request for Stay of Remaining Pre-Trial Deadlines and Memorandum Brief in Support, filed March 2, 2015 (Doc. 81)("MSJ"), is granted in part and denied in part.  The Court grants Defendant Northland Process Piping L.L.C.'s MSJ on Plaintiff American Mechanical Solutions, L.L.C.'s breach-of-contract and breach-of-the-implied-warranty-of-merchantability claims, and it denies the MSJ on American    Mechanical's    breach-of-the-implied-warranty-of-fitness-for-a-particular-purpose claim.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Michael R. Demarco
The Law Offices of Michael R. Demarco
McIntosh, New Mexico

> *Attorney for the Plaintiffs*

Nicole M. Charlebois
Jessica Singer
Lindsey Rae Fooks
Chapman and Charlebois, P.C.
Albuquerque, New Mexico

-- and --

Daniel W. Lewis
Jenny L. Jones
Allen, Shepard, Lewis & Syra, P.A.
Albuquerque, New Mexico

> *Attorneys for Defendant Northland Process Piping, Inc.*

Jennifer G. Anderson
Tiffany L. Roach Martin
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

*Attorneys for Defendant Unisource Manufacturing, Inc.*