## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

AMERICAN MECHANICAL SOLUTIONS, L.L.C.,

     Plaintiff,

vs.                                                                          No. CIV 13-1062 JB/SCY

NORTHLAND PROCESS PIPING, INC. and
UNISOURCE MANUFACTURING, INC.,

     Defendants.

### UNSEALED MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** comes before the Court on Defendant Northland Process Piping, Inc.'s

Second Motion for Summary Judgment, filed October 7, 2015 (Doc. 115)("MSJ"). The Court

held a hearing on January 27, 2016. The primary issue is whether Defendant Northland Process

Piping, Inc. is entitled to summary judgment on Plaintiff American Mechanical Solutions,

L.L.C.'s breach-of-contract, breach-of-the-implied-warranty of merchantability, and breach of

the implied warranty of fitness for a particular purpose claims. The Court will grant the MSJ in

part. In its Memorandum Opinion, filed April 30, 2016 (Doc. 134)("MO on MSJ 1"), the Court

granted in part the Defendants' Motion for Summary Judgment and Request for Stay of

Remaining Pre-Trial Deadlines and Memorandum Brief in Support, filed March 2, 2015 (Doc.

---

[1]In its Sealed Memorandum Opinion and Order, filed April 30, 2016 (Doc. 135)("Sealed MOO"), the Court inquired whether the parties had any proposed redactions to protect confidential information within the Sealed MOO before the Court published a public version of the Sealed MOO. See Sealed MO at 1 n.1. The Court gave the parties fourteen calendar days to provide notice of any proposed redactions. See Sealed MOO at 1 n.1. The parties have not contacted the Court or made any filings within CM/ECF to indicate that they have any proposed redactions. Indeed, Defendant Northland Piping filed a Letter to District Judge James O. Browning from Daniel W. Lewis on May 12, 2016 (Doc. 137)("Lewis Letter"), which "advise[d] the Court that Defendant does not believe any redactions are necessary in the Memorandum Opinion and order to protect confidential information." Lewis Letter at 3. Consequently, the Court is now re-filing the Sealed MOO in its unsealed form.

81)("MSJ 1"), ruling that Northland Piping was entitled to summary judgment on American Mechanical's breach-of-contract and breach-of-the-implied-warranty-of-merchantability claims. The Court concluded, however, that, because neither causation nor proximate causation are prima facie elements in a breach-of-the-implied-warranty-of-fitness-for-a-particular-purpose claim under New Mexico law, Northland Piping was not entitled to summary judgment on that claim. Because Northland Piping has now produced expert testimony indicating that the hoses were fit for their particular purpose and because American Mechanical has failed to produce evidence creating a genuine issue of material fact on this issue, the Court concludes that Northland Piping is now entitled to summary judgment on American Mechanical's breach-of-the-implied-warranty-of-fitness-for-a-particular-purpose claim.

## FACTUAL BACKGROUND

American Mechanical alleges that the hoses it installed at the Southwest Cheese plant failed. See MSJ 1 at 3 (setting forth this fact); Plaintiff's Response to Motion to for Summary Judgment and Response to Request for Stay of Remaining Pre-Trial Deadlines at 4, filed March 16, 2015 (Doc. 83)("Response to MSJ 1")(not disputing this fact). American Mechanical alleges that the Defendants caused the failure of the hoses. See MSJ 1 at 3 (setting forth this fact); Response to MSJ 1 at 4 (not disputing this fact). American Mechanical alleges that the hoses' failure caused it damages. See MSJ 1 at 3 (setting forth this fact); Response to MSJ 1 at 4 (not disputing this fact). Pursuant to the Court's July 9, 2014 Order, American Mechanical's deadline to disclose its experts under the Federal Rules of Civil Procedure was October 6, 2014. See MSJ 1 at 3 (setting forth this fact); Response to MSJ 1 at 4 (admitting this fact). To date, American Mechanical has not, under rule 26, disclosed any experts. See MSJ 1 at 3 (setting forth this fact);

Response to MSJ 1 at 4 (not disputing this fact).  American Mechanical has no expert testimony that the defendants caused any of the alleged hose failures, about which it complains.  See MSJ 1 at 3 (setting forth this fact); Response to MSJ 1 at 4 (not disputing this fact).  American Mechanical has no expert testimony that the Defendants caused the harm, which it alleges it suffered.  See MSJ 1 at 3 (setting forth this fact); Response to MSJ 1 at 4 (not disputing this fact).

"The physical evidence does not support that separation or low volume leakage was caused by improper crimping or assembly of hoses and fittings by NPP, to a reasonable degree of engineering probability."[2]  MSJ at 3 (setting forth this fact).  See Plaintiff American Mechanical Solution's Response in Opposition to Defendant Northland Process Piping 2nd Motion for Summary Judgment at 2, filed October 21, 2015 (Doc. 117)("Response")(not disputing this fact).  "Because similar connections are used throughout the SWC facility, it is reasonable to conclude that the reported leaks were likely not the result of inadequate design in the connection

---

[2]American Mechanical purports to dispute this fact, contending: "Mr. [Thomas J.] Kulaga[, P.E., Northland Piping's expert], claims that there is not sufficient evidence to support a leak or separation of the NPP hose assembly, but admits that additional testing is necessary, and for this reason the Plaintiff disputes his findings."  Response at 2.  At the summary-judgment stage, however, the non-moving party must come forth with specific evidence attached to its Response where the moving party has met is burden, triggering the non-moving party's burden of coming forward with evidence.  Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1).  It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  Here, although American Mechanical purports to dispute this fact, it does not support its assertion with any evidence from the record, such as interrogatories, depositions, photographs, or expert testimony, that shows a factual issue.  The Court therefore deems this fact undisputed.

components."[3]  MSJ at 3.  See Response at 2-3 (not disputing this fact).  "To a reasonable degree of engineering probability, none of the data or evidence presented indicated that the alleged failures were a result of errors in the design or assembly of the hoses and connections themselves."[4]  MSJ at 3; Response at 3 (not disputing this fact).

---

[3]American Mechanical purports to dispute this fact, contending:

The Plaintiff agrees that similar connections that were appropriately crimped per the standards are currently in use throughout the Southwest Cheese facility.  The Plaintiff asserts that it is not the inadequate design of the connection of the individual components, but the resulting leaks and separation were caused by the faulty uncramping of the fittings produced by the Defendant NPP.  In the report it is noted that Conor McWilliams of Southwest Cheese stated that in three cases the hose had separated from the connection.

Response at 2-3.  Again, at the summary-judgment stage, "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1).  Here, although American Mechanical purports to dispute this fact, it "rest[s] on mere allegations or denials."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The Court therefore deems this fact undisputed.

[4]American Mechanical purports to dispute this fact, asserting:

The report argues that there was not any data or evidence that indicated that the failures were a result of design or assembly, but the Plaintiff asserts that statement fails to take into account the report itself which states: "Physical evidence in this matter was incomplete and inconclusive in identifying leaking or separated hoses."  See [Report of Findings at 6, filed October 7, 2015 (Doc. 115-1)("Kulaga Report")].

Response at 3.  At the summary-judgment stage, however, the non-moving party must come forth with specific evidence attached to the Response where the moving party has met is burden of triggering the non-moving party's burden of coming forward with evidence.  Here, although American Mechanical purports to dispute this fact, it does not attach any evidence, such as interrogatories, depositions, photographs, or expert testimony, showing a factual issue.  The Court therefore deems this fact undisputed.

## PROCEDURAL BACKGROUND

American Mechanical filed its case in state court on April 8, 2013. See Complaint for Breach of Contract, Breach of Implied Warranty of Merchantability, and Breach of Implied Warranty of Fitness for a Particular Purpose at 1, filed April 8, 2013 (Doc. 1-1)("Complaint"). The Defendants removed the case to federal court on October 29, 2013. See Defendants' Notice of Removal, filed October 29, 2013 (Doc. 1)("Notice of Removal"). The Defendants invoked diversity jurisdiction, representing that there is complete diversity of citizenship between the Plaintiffs and the Defendants. See Notice of Removal ¶¶ 10-19, at 3-5.[5] In its Complaint, American Mechanical asserts causes of action for: (i) breach of contract, see Complaint ¶¶ 22-27, at 3-4; (ii) breach of implied warranty of merchantability, see Complaint ¶¶ 28-31, at 4; and (iii) breach of implied warrants of fitness for a particular purpose, see Complaint ¶¶ 32-36, at 4-5. The Defendants moved for summary judgment on American Mechanical's breach-of-contract, breach-of-implied-warranty-of-merchantability, and breach-of-implied-warranty-of-fitness-for-a-particular-purpose claims. See MSJ 1 at 1. As described above, in its MO on MSJ 1, the Court granted summary judgment in Northland Piping's favor on American Mechanical's breach-of-

---

[5]The Defendants' Notice of Removal, makes clear that complete diversity of citizenship exists in this case and the parties do not otherwise question the Court's jurisdiction. See Notice of Removal ¶¶ 11-15, at 3-4. The Notice of Removal notes that American Mechanical is a limited liability company with four individual members that are each residents and citizens of New Mexico. See Notice of Removal ¶ 12, at 3. American Mechanical is therefore a citizen of New Mexico for diversity purposes. See Notice of Removal ¶ 12, at 3. Unisource Manufacturing is a foreign corporation that is incorporated in Oregon and has its principal place of business in Oregon. See Notice of Removal ¶ 13, at 3-4. Unisource Manufacturing is therefore a citizen of Oregon for diversity purposes. See Notice of Removal ¶ 13, at 3-4. Finally, Northland Piping is a foreign corporation that is incorporated in Minnesota and has its principal place of business in Minnesota. See Notice of Removal ¶ 14, at 4. Northland Piping is therefore a citizen of Minnesota for diversity purposes. See Notice of Removal ¶ 14, at 4. "Thus, there is complete diversity of citizenship between the Plaintiff and the Defendants." Notice of Removal ¶ 15, at 4.

contract and breach-of-the-implied-warranty-of-merchantability claims.  See MO on MSJ 1 at 1.

The Court concluded, however, that American Mechanical survived summary judgment on its

breach-of-the-implied-warranty-of-fitness-for-a-particular-purpose claim.  See MO on MSJ 1 at

1.

      **1.**     **The MSJ.**

Northland Piping filed the MSJ on October 7, 2015.  See MSJ at 1.  Northland Piping

explains that, at the June 24, 2015, hearing on the MSJ 1, "the Court expressed its concern that

NPP's Motion did not also contain facts establishing that NPP did not cause the alleged hose

leaks."  MSJ at 2.  Northland Piping states that it "argued that such facts were unnecessary where

Plaintiff did not have an expert establishing NPP was the cause of the alleged hose leaks, or in

the alternative facts which would establish there is an obvious defect to the hoses, which would

not require expert testimony."  MSJ at 2.  According to Northland Piping, following the hearing,

on August 21, 2015, it nonetheless disclosed its expert, Thomas J. Kulaga, P.E., who is a

mechanical engineer.  See MSJ at 2.  Northland Piping explains that Kulaga issued a Report of

Findings, filed October 7, 2015 (Doc. 115-1)("Kulaga Report").  MSJ at 2.  Kulaga supports his

report with a sworn affidavit.  See Affidavit of Thomas J. Kulaga, P.E., executed October 6,

2015, filed October 7, 2015 (Doc. 115-2)("Kulaga Aff.").  Northland Piping asserts that:

> Based on Mr. Kulaga's review of the evidence in this matter and visual
> inspections of the subject hoses and the Southwest Cheese facility, Mr. Kulaga
> determined that any allegation that separation or low volume leakage was caused
> by improper crimping or assembly of hoses and fittings by NPP was not
> supported by the physical evidence to a reasonable degree of engineering
> probability.

MSJ at 3.  According to Northland Piping, its MSJ therefore addresses the Court's concerns at

the June 24, 2015, hearing and establishes through expert testimony that Northland Piping was

not the cause of the alleged hose leaks.  <u>See</u> MSJ at 3.  Northland Piping asks the Court to grant summary judgment in its favor.  <u>See</u> MSJ at 3.

Northland Piping advances two arguments in support of the MSJ.  <u>See</u> MSJ at 4-6.  First, Northland Piping contends that, with respect to the material facts that it sets forth in its MSJ 1, American Mechanical has never disputed them as rule 56 of the Federal Rules of Civil Procedure requires.  <u>See</u> MSJ at 4.  Northland Piping argues that American Mechanical's Response does not cite to anything in the record that supports its contentions.  <u>See</u> MSJ at 4.  According to Northland Piping, under rule 56(d)(2) and (3), if a party does not properly support a fact or fails to properly address another party's assertion of fact as rule 56(c) requires, the Court may consider the facts undisputed for the purposes of the motion and grant summary judgment.  <u>See</u> MSJ at 4.  Northland Piping argues that American Mechanical's Response to MSJ 1 and its arguments at the hearing "are nothing more than arguments of counsel and lacked any specificity under the requirements of *Celotex*[6] and Rule 56."  MSJ at 4.  Northland Piping insists that, based on American Mechanical's failure to comply with and meet its burden under rule 56, the Court has the authority to grant summary judgment in its favor.  <u>See</u> MSJ at 4.

Second, Northland Piping argues that there is no dispute as to any material fact and that it is entitled to judgment as a matter of law, because Northland Piping was not the cause of the alleged leaks.  <u>See</u> MSJ at 4.  Northland Piping argues that it has disclosed its expert and a rule 26 report which establish that Northland Piping's "actions or inactions were not the cause of any alleged leaks to the hoses at the center of this lawsuit."  MSJ at 4.  Northland Piping explains that Kulaga is a registered mechanical engineer with a Bachelor of Science degree in mechanical

---

[6]<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

engineering, and it contends that he is qualified to offer opinions in this case as to the cause of the leaks.  See MSJ at 4.  Northland Piping states that Kulaga conducted an extensive review of the hoses and Southwest Cheese Plant, deposition transcripts, discovery, and the installation manual.  See MSJ at 4.  According to Northland Piping, "[b]ased on the visual examination of the hoses, Mr. Kulaga did not see any clear evidence of leakage past the crimped hose connection."   MSJ at 4.   Northland Piping therefore asserts that American Mechanical's allegations that Northland Piping's improper crimping or assembly of hoses and fittings caused the separation or low volume leakage lacks support of the physical evidence in this case, to a reasonable degree of engineering probability.   See MSJ at 4-5.   Northland Piping further contends that Kulaga concludes "that it was a reasonable opinion that the alleged leaks were not the result of inadequate design of the connection components due to the fact that similar connections were successfully in use in other parts of the SWC facility."  MSJ at 5.

Northland Piping concludes:

> Ultimately, Mr. Kulaga concluded that none of the data or evidence presented indicated that the alleged failures were a result of errors in the design or assembly of the hoses and connections themselves, to a reasonable degree of engineering probability.  [Kulaga Aff. at 8].  Instead, Mr. Kulaga determined that the configuration of the piping arrangement, which was outside of NPP's involvement, likely contributed to any alleged failure due to external structural stress to the hose assemblies.  [Kulaga Aff. at 9].  Regardless of the cause of any leakage, Mr. Kulaga's testimony clearly establishes that NPP's actions or inactions played no part.

> Therefore, Defendant NPP's Second Motion for Summary Judgment addresses this Court's concerns and clearly establishes through expert testimony, which Plaintiff cannot controvert, that NPP did not cause the alleged leaks, to a reasonable degree of engineering probability. For these reasons, summary judgment in NPP's favor is proper under the circumstances.

MSJ at 5.  Accordingly, Northland Piping asks the Court to enter summary judgment in its favor.

See MSJ at 6.

> ### 2.      **The Response**.

American Mechanical responded to the MSJ on October 21, 2015.  See Response at 1.

First, American Mechanical argues that it disputed Northland Piping's facts in its initial motion

for summary judgment.  See Response at 3.  American Mechanical writes:

> At the June 24, 2015 hearing Plaintiff acknowledged that the Court had been supplied with the emails and voicemails between the parties during the settlement conference that clearly demonstrated that the Defendant knew and acknowledged that the hoses were undercrimped.  All of that same information had been given to NPP and Unisource in discovery.  The Plaintiff also argued that the facts speak for themselves, and that hoses designed for this application should not come apart under normal use.  At this time the Plaintiff plans to do a live demonstration for the jury of the faulty hoses under the actual working pressure to show how they leaked.

Response at 3.  Second, American Mechanical asserts that Northland Piping caused the leaks.

See Response at 3.  American Mechanical contends that Kulaga's expert report is flawed.  See

Response at 3.  According to American Mechanical, by Kulaga's own admission, "insufficient

testing was done, and the proper kinds of tests are alluded to in his own report."  Response at 3.

American Mechanical further argues:

> It should also be considered when looking at the actual design of the hose assembly and their connection to the clarifiers and separators that that design works, and it occurs all through the Southwest Cheese plant.  It is not a fault of design.  Mr. Kulaga notes, "Such bucking is consistent with water hammer, and is a natural and foreseeable consequence of the discharge events that are a part of the normal operation of the clarifiers and separators".  *See* [Kulaga Report at 9].  In other words, the hoses and fittings are part of a design problem that is common in the industry, and when the fittings are correctly crimped to the hoses, there are no problems as Mr. Kulaga noted in his report throughout the plant.

Response at 3-4.  American Mechanical therefore contends that there are genuine issues of fact and that the Court should deny the MSJ.  See Response at 4.

> **3.  The Reply.**

Northland Process Piping replied on November 24, 2015.  See Defendant Northland Process Piping Inc.'s Reply in Support of its Second Motion for Summary Judgment, filed November 24, 2015 (Doc. 121)("Reply").  Northland Piping asserts that its MSJ and Reply establish through expert testimony that Northland Piping was not the cause of the alleged separation and/or low volume leakage of the hoses.  See Reply at 2.  Northland Piping attacks American Mechanical's "unsupported blanket statement stating that '[w]hat the Plaintiff *can show at trial* is that the NPP hoses and fittings are still in place without any problem whatsoever under the same conditions as the faulty hoses were under.'"  Reply at 2 (quoting Response at 2)(emphasis in Reply).  Northland Piping contends that there are two fatal flaws in American Mechanical's argument.  See Reply at 2.  First, Northland Piping argues that American Mechanical's argument is built "on the faulty assumption that improper crimping by NPP was the cause of Plaintiff's damages."  Reply at 2.  Northland Piping contends that Kulaga stated, in his affidavit, "that separation or low volume leakage was caused by improper crimping or assembly of hoses and fittings by NPP is not supported by the physical evidence to a reasonable degree of engineering probability."  Reply at 2 (quoting Kulaga Aff. ¶ 6).  According to Northland Piping, American Mechanical has not offered any additional expert testimony or facts to rebut Kulaga's clear statement; thus summary judgment is proper.  See Reply at 2.

Northland Piping argues that the second flaw in American Mechanical's Response is "the absence of any evidence to meet Plaintiff's burden at the summary-judgment stage and establish

a genuine issue of material fact that would allow this matter to go to a jury trial." Reply at 2. Northland Piping contends that it met its burden by submitting the expert report and Kulaga Aff., and that the burden then shifted to American Mechanical to demonstrate the existence of a genuine issue for trial on a material fact. See Reply at 2. According to Northland Piping, American Mechanical cannot "simply assert what the evidence will show at trial or rely on arguments and representations of counsel, as Rule 56 requires that counsel set forth specific admissible evidence to establish that there is a genuine issue for trial." Reply at 3. Moreover, Northland Piping contends that American Mechanical has not met its burden, and that summary judgment remains proper given the undisputed material facts and Kulaga's expert opinion that Northland Piping was not the cause of the alleged leakage and/or separation, to a reasonable degree of engineering probability. See Reply at 3.

In its Reply's "arguments and authorities" section, Northland Piping then makes two arguments. See Reply at 5-9. First, Northland Piping contends that summary judgment remains appropriate, because of American Mechanical's "continued failure to comply with Rule 56 and refer with specificity to any evidence disputing Defendant NPP's material facts." Reply at 5. Northland Piping argues that American Mechanical's only argument that it disputed Northland Piping's material facts is that the "Plaintiff's counsel set forth arguments at the June 24, 2015 hearing that 'emails and voicemails' between the parties discussed in the context of the Settlement Context 'clearly demonstrated' that the Defendant knew and acknowledged that the hoses were undercrimped." Reply at 5. According to Northland Piping, at the hearing, the Court made clear that American Mechanical needed to controvert material facts with admissible evidence. See Reply at 5. Northland Piping concludes that American Mechanical "has failed to

establish that undercrimping was the cause of any damage to Plaintiff, and NPP's expert has clearly established that improper crimping was not the cause of the alleged leaking or separation based on the physical evidence available to him."  Reply at 5-6.  Northland Piping also asserts that the alleged emails and voicemail messages are inadmissible under the Federal Rules of Evidence.  See Reply at 6.

Second, Northland Piping argues that American Mechanical "misinterprets NPP's expert report and attempts to misconstrue Mr. Kulaga's findings with unsupported arguments of counsel."  Reply at 7.  Northland Piping asserts that American Mechanical misconstrues Kulaga's conclusion regarding additional testing that could be completed.  According to Northland Piping, the physical evidence that American Mechanical provided for inspection and testing "is insufficient to determine the root cause of the alleged separated connections and low-volume leakage."  Reply at 7.  Northland Piping contends that, "[d]espite this, any allegations that the separation or leakage was caused by improper crimping or assembly of the hoses and fittings by NPP is not supported by the physical evidence currently available at this time, to a reasonable degree of engineering probability."  Reply at 7.  Northland Piping maintains that Kulaga makes no assertions that he needs additional testing as to this aspect.  See Reply at 7. Northland Piping further asserts that American Mechanical has not set forth any evidence in its Response that would dispute Kulaga's conclusion.  See Reply at 7.  Northland Piping concludes:

> Given the successful use of similar connections throughout the Southwest Cheese facility, Mr. Kulaga concludes that the reported leaks and separation were likely not the result of inadequate design or assembly of the actual hoses or connections. [Kulaga Aff.] at ¶ 8.  Unrelated to NPP's involvement, Mr. Kulaga concludes that the piping arrangement, as approved by Southwest Cheese, contributed to the alleged failures by applying external structural stresses to the hose assemblies. [Kulaga Aff.] at ¶ 9.  Thus, the arguments of counsel regarding Mr. Kulaga's expert report are incorrect and unsupported by admissible evidence.  The

- 12 -

admissible evidence presented by Defendant undisputedly establishes that NPP was not the cause of any alleged damages claimed by Plaintiff.

Similarly, nowhere in Mr. Kulaga's report does he state that water hammer is a common industry design problem and that if NPP had properly crimped the hoses, there would have been no problems as alleged in this lawsuit. Mr. Kulaga concludes in his report that the "separation of the hose connection ... was consistent with failure resulting from water hammer[7]. . . [and] the pressure wave would have been more likely to separate the connection rather than cause the hose to split."  *See* [Kulaga Report at] 10-11.  Therefore, "[g]iven the available data, the materials selected by SWC for the hose assemblies were inadequate to handle the peak pressures in the piping system.  None of the data or evidence presented indicated that the failures were a result of errors in the design or assembly of the hoses and connections themselves."  [Kulaga Report] at 11. Again, Plaintiff[']s assertions are only arguments of counsel and the admissible evidence introduced by NPP establishes the contrary.

For these reasons, Plaintiff has failed to create a genuine issue of material fact. Mr. Kulaga's expert report has established that NPP was not the cause of the alleged damages to Plaintiff and therefore summary judgment is proper because Plaintiff has no expert or admissible evidence to meet his burden of proof in responding to NPP's Motion.

Reply at 7-8.

### 4. <u>The Hearing on the MSJ</u>.

The Court held a hearing on the MSJ on January 27, 2016.  <u>See</u> Transcript of Hearing (taken January 27, 2016)("Tr.").[8]  The parties largely stuck to their briefing.  After the Court gave its proposed ruling on the MSJ 1, Northland Piping addressed some of the courts concerns with respect to causation and explained that, after the hearing on the MSJ 1, it had retained an expert and issued a report.  <u>See</u> Tr. at 19:2-17 (Lewis).  Northland Piping contended that the MSJ

---

[7]"Water hammer" is "a concussion or sound of concussion of moving water against the sides of a containing pipe or vessel (as a steam pipe)."  <u>Water Hammer</u>, Merriam-Webster Online Dictionary (2015), http://www.merriam-webster.com/dictionary/water%20hammer.

[8]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final version may have slightly different page and/or line numbers.

and the expert report should resolve the Court's concerns with ruling in its favor on the breach-of-the-implied-warranty-of-fitness-for-a-particular-purpose claim.   <u>See</u> Tr. at 19:23-20:5 (Lewis).   Northland Piping made two points with respect to causation not being an element of a breach-of-the-implied-warranty-of-fitness-for-a-particular-purpose claim.   <u>See</u> Tr. at 20:6-7 (Lewis).   First, Northland Piping contended that it now had affirmative evidence from Kulaga that there is insufficient evidence to conclude that any low volume leakage or separation of the fitting from the hose can be attributed to Northland Piping.   <u>See</u> Tr. at 20:7-21:7 (Lewis). According to Northland Piping, Kulaga's conclusion is that one cannot take the evidence present in this case and conclude that Northland Piping provided something that did not function as it should have.   <u>See</u> Tr. at 20:7-21:7 (Lewis).   Second, Northland Piping directed the Court's attention to the third element for a breach-of-the-implied-warranty-of-fitness-for-a-particular-purpose claim.   <u>See</u> Tr. at 21:7-12 (Lewis).   According to Northland Piping, a plaintiff must show that the product or item supplied was not fit for that purpose, and "[t]here is a great deal of overlap, if it is not actually synonymous in that case with the opinion that Mr. Kulaga has given." Tr. at 21:10-14 (Lewis).   Northland Piping further explained:

> If the hoses were unfit -- the hoses and fittings -- were unfit for their purpose, then plaintiff, as part of its prima facie case would have to show that they separated either because of the design or assembly defect by Northland. What we have is uncontroverted testimony from an expert who has examined the hoses and has made several detailed opinions including the fact that it did not appear that there was any leakage beyond the immediate fitting, that the leakage couldn't be caused by improper . . . crimping or assembly; that given the successful use of similar connections throughout the facility it's reasonable to conclude that the reported leaks were not likely the result of inadequate design or connection components; that none of the data or evidence presented indicate that the failures were the result of errors in the design or assembly of the hoses and connections themselves . . . . We submit that the testimony of Mr. Kulaga is sufficient for the Court to conclude that defendants have now made a prima facie showing under our burden under <u>Celotex</u>, that the product supplied was fit for the

purpose for which it was supplied, and that any failure of the product was not the result of assembly or design issues with the product itself, but rather the configuration of the piping and the water hammer within the facility.

And so we would ask the Court to grant summary judgment as to all three counts: breach of contract, breach of warranty of merchantability because the plaintiff has no expert, and because we've supplied expert testimony affirmatively demonstrating that there is simply no ability to prove causation, and with respect to the implied warranty of fitness for a particular purpose because we've demonstrated with affirmative evidence through expert testimony, that the hoses and fittings as supplied were fit for their purpose.

Tr. at 21:14-23:7 (Lewis). American Mechanical reiterated its arguments from the briefing, and

contended that Kulaga did not have enough information available to him to say definitively why

the hoses did or did not come apart. See Tr. at 24:8-25:7 (Demarco). The Court then indicated

that it was inclined to grant the MSJ:

Well, here's what I'm thinking on this motion I guess I'm inclined to think it's a [g]rant[,] but I need to study it some more. I think we're supposed to see each other again if I remember on March 4, and that's for the pretrial conference. And then I've got you set for trial later in March. . . . [W]hat I'd propose [is let] me get this opinion I'm working on this 30 pager, let me get it finished get it out to you then turn to this one, get it out to you, about you instead of y'all doing anymore work getting ready for trial on this case why don't we just get together on March 4. . . . If I get the opinions out and I decide that this is a grant and there is just not any issue for trial, then I'll enter a final judgment and everybody can do what they want on that[.]

Tr. at 26:23-28:2 (Court).

## **LAW REGARDING MOTIONS FOR SUMMARY JUDGMENT**

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the

initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving

party's case.'" Herrera v. Santa Fe Pub. Sch., 956 F. Supp. 2d 1191, 1221 (D.N.M. 2013)

(Browning, J.)(quoting Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th

Cir. 1991)).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

> Before the court can rule on a party's motion for summary judgment, the moving
> party must satisfy its burden of production in one of two ways: by putting
> evidence into the record that affirmatively disproves an element of the nonmoving
> party's case, or by directing the court's attention to the fact that the non-moving
> party lacks evidence on an element of its claim, "since a complete failure of proof
> concerning an essential element of the nonmoving party's case necessarily renders
> all other facts immaterial."  Celotex, 477 U.S. at 323-25.  On those issues for
> which it bears the burden of proof at trial, the nonmovant "must go beyond the
> pleadings and designate specific facts to make a showing sufficient to establish
> the existence of an element essential to his case in order to survive summary
> judgment." Cardoso v. Calbone, 490 F.3d 1194, 1197 (10th Cir. 2007).

Plustwik v. Voss of Norway ASA, 2013 WL 1945082, at *1 (D. Utah May 9, 2013)(emphasis

added).  "If the *moving* party will bear the burden of persuasion at trial, that party must support

its motion with credible evidence -- using any of the materials specified in Rule 56(c) -- that

would entitle it to a directed verdict if not controverted at trial."  Celotex Corp. v. Catrett, 477

U.S. at 331 (Brennan, J., dissenting)(emphasis in original).[9]  Once the movant meets this burden,

rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine

issue for trial.  See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 256 (1986).

　　　　The party opposing a motion for summary judgment must "set forth specific facts

showing that there is a genuine issue for trial as to those dispositive matters for which it carries

---

[9]Although the Honorable William J. Brennan, Jr., Associate Justice of the Supreme Court
of the United States of America, dissented in Celotex Corp. v. Catrett, this sentence is widely
understood to be an accurate statement of the law.  See 10A Charles Allen Wright & Arthur R.
Miller, Federal Practice and Procedure § 2727, at 470 (3d ed. 1998)("Although the Court issued
a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment
burden of proof operates; they disagreed as to how the standard was applied to the facts of the
case.").

the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993) ("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.")(internal quotation marks omitted). Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256. See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("[O]nce a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried." (citation omitted)(internal quotation marks omitted)).

Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l Ins. Co. v. Omer, No. CIV 07-2123 JAR, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(Robinson, J.)(citing Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006); Fed. R. Civ. P. 56(e)). "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that

something will turn up at trial.'"   Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1

(quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

To deny a motion for summary judgment, genuine factual issues must exist that "can be

resolved only by a finder of fact because they may reasonably be resolved in favor of either

party."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 250.  A mere "scintilla" of evidence will

not avoid summary judgment.  Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Anderson v.

Liberty Lobby, Inc., 477 U.S. at 248).  Rather, there must be sufficient evidence on which the

fact finder could reasonably find for the nonmoving party.  See Anderson v. Liberty Lobby, Inc.,

477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448

(1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539.  "[T]here is no evidence for trial unless there is

sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If

the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may

be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (citations omitted).  Where a

rational trier of fact, considering the record as a whole, could not find for the nonmoving party,

there is no genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind certain

principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue

whether a genuine issue exists as to material facts requiring a trial.  See Anderson v. Liberty

Lobby, Inc., 477 U.S. at 249.  Second, the ultimate standard of proof is relevant for purposes of

ruling on a summary judgment, such that, when ruling on a summary judgment motion, the court

must "bear in mind the actual quantum and quality of proof necessary to support liability."

Anderson v. Liberty Lobby, Inc., 477 U.S. at 254.  Third, the court must resolve all reasonable inferences and doubts in the nonmoving party's favor, and construe all evidence in the light most favorable to the nonmoving party.  See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999); Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  Fourth, the court cannot decide any issues of credibility.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

There are, however, limited circumstances in which the court may disregard a party's version of the facts.  This doctrine developed most robustly in the qualified immunity arena.  In Scott v. Harris, 550 U.S. 372 (2007), the Supreme Court concluded that summary judgment was appropriate where video evidence "quite clearly contradicted" the plaintiff's version of the facts.  550 U.S. at 378-81.  The Supreme Court explained:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.  Fed. Rule Civ. Proc. 56(c).  As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. [at] 586-587 . . . (footnote omitted).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. [at] 247-248 . . . .  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

> That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life.  Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him.  The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

Scott v. Harris, 550 U.S. at 380-81 (emphasis in original).

The United States Court of Appeals for the Tenth Circuit applied this doctrine in

Thomson v. Salt Lake County, 584 F.3d 1304 (10th Cir. 2009), and explained:

> [B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts."  York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008) (quoting Scott, 550 U.S. at 380); see also Estate of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1258 (10th Cir. 2008).

Thomson v. Salt Lake Cnty., 584 F.3d at 1312 (brackets omitted).  "The Tenth Circuit, in Rhoads

v. Miller, [352 F. App'x 289 (10th Cir. 2009)(Tymkovich, J.)(unpublished,[10]] explained that the

blatant contradictions of the record must be supported by more than other witnesses'

testimony[.]"   Lymon v. Aramark Corp., 728 F. Supp. 2d 1222, 1249 (D.N.M. 2010)

(Browning, J.)(citation omitted), aff'd, 499 F. App'x 771 (10th Cir. 2012).

> In evaluating a motion for summary judgment based on qualified immunity, we take the facts "in the light most favorable to the party asserting the injury."  Scott v. Harris, 550 U.S. 372, 377 (2007).   "[T]his usually means adopting . . . the

---

[10]Rhoads v. Miller is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored.  However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court finds that Rhoads v. Miller, 352 F. App'x 289 (10th Cir. 2009), has persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion and Order.

plaintiff's version of the facts," id. at 378, unless that version "is so utterly discredited by the record that no reasonable jury could have believed him," id. at 380. In Scott, the plaintiff's testimony was discredited by a videotape that completely contradicted his version of the events. 550 U.S. at 379. Here, there is no videotape or similar evidence in the record to blatantly contradict Mr. Rhoads' testimony. There is only other witnesses' testimony to oppose his version of the facts, and our judicial system leaves credibility determinations to the jury. And given the undisputed fact of injury, Mr. Rhoads' alcoholism and memory problems go to the weight of his testimony, not its admissibility . . . . Mr. Rhoads alleges that his injuries resulted from a beating rendered without resistance or provocation. If believed by the jury, the events he describes are sufficient to support a claim of violation of clearly established law under Graham v. Connor, 490 U.S. 386, 395-96 (1989), and this court's precedent.

Rhoads v. Miller, 352 F. App'x at 291-92 (internal quotation marks omitted). See Lymon v. Aramark Corp., 728 F. Supp. 2d at 1249-50 (quoting Rhoads v. Miller, 352 F. App'x at 291-92). In a concurring opinion in Thomson v. Salt Lake County, the Honorable Jerome A. Holmes, United States Circuit Judge for the Tenth Circuit, stated that courts must focus first on the legal question of qualified immunity and "determine whether plaintiff's factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the legal question before the court," before inquiring into whether there are genuine issues of material fact for resolution by the jury. 584 F.3d at 1326-27 (Holmes, J., concurring)(citing Goddard v. Urrea, 847 F.2d 765, 770 (11th Cir. 1988)(Johnson, J., dissenting))(observing that, even if factual disputes exist, "these disputes are irrelevant to the qualified immunity analysis because that analysis assumes the validity of the plaintiffs' facts").

## ANALYSIS

The Court will grant the MSJ on American Mechanical's breach-of-the-implied-warranty-of-fitness-for-a-particular-purpose claim. In its MO on MSJ 1, the Court granted the

MSJ 1, in part, ruling that Northland Piping was entitled to summary judgment on American Mechanical's breach-of-contract and breach-of-the-implied-warranty-of-merchantability claims. See MO on MSJ 1 at 1.  The Court concluded, however, that, while expert testimony is necessary to establish causation for breach-of-contract claims and proximate causation for breach-of-the-implied-warranty-of-merchantability claims, because neither causation nor proximate causation are prima facie elements in a breach-of-the-implied-warranty-of-fitness-for-a-particular-purpose claim under New Mexico law, Northland Piping was not entitled to summary judgment on that claim.  See MO on MSJ 1 at 1-2.  Because Northland Process Piping has now produced expert testimony indicating that the hoses were fit for their particular purpose and American Mechanical has failed to cite to evidence in the record in its Response creating a genuine issue of material fact, the Court concludes that Northland Piping is entitled to summary judgment on American Mechanical's breach-of-the-implied-warranty-of-fitness-for-a-particular-purpose claim.

**I.      THE COURT HAS ALREADY GRANTED SUMMARY JUDGMENT ON AMERICAN MECHANICAL'S BREACH-OF-CONTRACT AND BREACH-OF-THE-IMPLIED-WARRANTY-OF-MERCHANTABILITY CLAIMS.**

In its MO on MSJ 1, the Court granted in part and denied in part Northland Piping's MSJ 1.  See MO on MSJ 1 at 1-2.  The Court granted the MSJ 1 on American Mechanical's breach-of-contract and breach-of-the-implied-warranty-of-merchantability claims because American Mechanical failed to produce expert testimony to support the element of causation and/or proximate causation.  See MO on MSJ 1 at 1-2.  The Court denied the MSJ 1, however, on American Mechanical's breach-of-the-implied-warranty-of-fitness-for-a-particular-purpose claim.  See MO on MSJ 1 at 1-2.  The Court explained:

> Under New Mexico law, causation is a prima facie element for breach-of-contract claims and proximate causation is a prima facie element for breach-of-the-implied-warranty-of-merchantability claims, and the Court concludes that, in this case, the cause of the exploding or leaking hoses at the Southwest Cheese Factory cannot be determined by resort to common knowledge which an average person ordinarily possesses. Northland Piping is therefore entitled to summary judgment on American Mechanical's breach-of-contract and breach-of-the-implied-warranty-of-merchantability claims, because American Mechanical has not submitted expert testimony on them. Because the Court concludes that neither causation nor proximate causation is a prima facie element for a breach of the implied-warranty-of-fitness-for-a-particular-purpose claim under New Mexico law, however, it denies the MSJ as to that claim.

MO on MSJ 1 at 65-66.

## II.   NORTHLAND PIPING IS ENTITLED TO SUMMARY JUDGMENT ON AMERICAN MECHANICAL'S BREACH-OF-THE-IMPLIED-WARRANTY-OF-FITNESS-FOR-A-PARTICULAR-PURPOSE CLAIM.

The standards governing the consideration of a motion for summary judgment are well established. Rule 56(a) states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'" Herrera v. Santa Fe Pub. Sch., 956 F. Supp. 2d at 1221 (quoting Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d at 891). See Celotex Corp. v. Catrett, 477 U.S. at 323. "If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence -- using any of the materials specified in Rule 56(c) -- that would entitle it to a directed verdict if not controverted at trial." Celotex Corp. v. Catrett, 477 U.S. at 331 (Brennan, J., dissenting) (emphasis in original). Once the movant meets this burden, rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.

Here, Northland Piping has moved for summary judgment on American Mechanical's breach-of-the-implied-warranty-of-fitness-for-a-particular-purpose-claim.[11]   The Kulaga Report and the Kulaga Aff. support Northland Piping's MSJ.  See Kulaga Report at 1; Kulaga Aff. at 1. Together, these pieces of evidence indicate that "[t]he physical evidence does not support that separation or low volume leakage was caused by improper crimping or assembly of hoses and fittings by NPP, to a reasonable degree of engineering probability."  MSJ at 3 (setting forth this fact).  Further, "[b]ecause similar connections are used throughout the SWC facility, it is reasonable to conclude that the reported leaks were likely not the result of inadequate design in the connection components."  MSJ at 3.  Finally, "[t]o a reasonable degree of engineering probability, none of the data or evidence presented indicated that the alleged failures were a result of errors in the design or assembly of the hoses and connections themselves."  MSJ at 3.

Once Northland Pipeline met its initial burden under Celotex Corp. v. Catrett, American Mechanical was required to "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d at 1241.  See Vitkus v. Beatrice Co., 11 F.3d at 1539. Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other

_____

[11]In its MSJ, Northland Piping also moves for summary judgment on American Mechanical's two other claims -- breach of contract and breach of the implied warranty of merchantability.  See MSJ at 1-3.  The Court need not address those claims, however, because it already granted summary judgment in Northland Piping's favor on those claims in its MO on MSJ 1.  See MO on MSJ 1 at 1-2.

materials." Fed. R. Civ. P. 56(c)(1).  It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  See Abercrombie v. City of Catoosa, 896 F.2d at 1231.

American Mechanical does not meet its burden in its Response to the MSJ.  American Mechanical needed to come forth with specific evidence attached to its Response demonstrating that the hoses were not fit for their particular purpose.  Indeed, rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1). At the summary judgment stage, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. at 448); Vitkus v. Beatrice Co., 11 F.3d at 1539.  "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (citations omitted).  Where a rational trier of fact, considering the record as a whole, could not find for the nonmoving party, there is no genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587. Because American Mechanical does not cite to any evidence in the record indicating that the

hoses were not fit for their particular purpose, no rational trier of fact could find for it on its breach-of-the-implied-warranty-of-fitness-for-a-particular-purpose claim.

Northland Piping argues that American Mechanical's only argument that it has disputed Northland Piping's material facts is that the "Plaintiff's counsel set forth arguments at the June 24, 2015 hearing that 'emails and voicemails' between the parties discussed in the context of the Settlement Context 'clearly demonstrated' that the Defendant knew and acknowledged that the hoses were undercrimped."  Reply at 5.  According to Northland Piping, at the June 24, 2015, hearing, the Court made clear that American Mechanical needed to controvert material facts with admissible evidence.  See Reply at 5.  Northland Piping argues that American Mechanical "has failed to establish that undercrimping was the cause of any damage to Plaintiff, and NPP's expert has clearly established that improper crimping was not the cause of the alleged leaking or separation based on the physical evidence available to him."  Reply at 5-6.  The Court agrees that American Mechanical cannot "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation."  Colony Nat'l Ins. Co. v. Omer, No. CIV 07-2123 JAR, 2008 WL 2309005, at *1 (citing Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d at 1199; Fed. R. Civ. P. 56(e)).  Because American Mechanical does not cite to the record or attach any evidence to its Response to counter the Kulaga Report and the Kulaga Aff. -- which indicate that the hoses were fit for their purpose -- Northland Piping is entitled to summary judgment on American Mechanical's breach-of-the-implied-warranty-of-fitness-for-a-particular-purpose claim.

**IT IS ORDERED** that the Defendant Northland Process Piping, Inc.'s Second Motion for Summary Judgment, filed October 7, 2015 (Doc. 115), is granted in part.  The Court has

already granted summary judgment on American Mechanical's breach-of-contract and breach-of-the-implied warranty of merchantability claims, so it denies the MSJ as moot as to those claims.  See MO on MSJ 1 at 1-2.  It grants summary judgment in Northland Piping's favor on American Mechanical's breach-of-the-implied-warranty-of-fitness-for-a-particular-purpose claim.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Michael R. Demarco
The Law Offices of Michael R. Demarco
McIntosh, New Mexico

     *Attorney for the Plaintiffs*

Nicole M. Charlebois
Jessica Singer
Lindsey Rae Fooks
Chapman and Charlebois, P.C.
Albuquerque, New Mexico

-- and --

Daniel W. Lewis
Jenny L. Jones
Allen, Shepard, Lewis & Syra, P.A.
Albuquerque, New Mexico

     *Attorneys for Defendant Northland Process Piping, Inc.*

Jennifer G. Anderson
Tiffany L. Roach Martin
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

     *Attorneys for Defendant Unisource Manufacturing, Inc.*

- 27 -